RECEIVED BY MAIL
DEC 1 4 2020
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Mario Ferbo Mancini - Pro Se,
Bureau of Prisons No. 11007-041

                Plaintiff(s),

(Enter the full name(s) of ALL plaintiff(s)
and prisoner number(s) in this action.)

vs.                                                       Case No. __20-cv-2532 ECT/DTS__
                                                       (To be assigned by Clerk of District Court)

Federal Bureau of Prisons
Warden Fikes
Dr. Mayer Clinical Director  FCI Sandstone
Dr. Jarod Broadway  St. Mary's Duluth Neurosurgeon
Heidi Voss Health Service Administrator FCI Sandstone
Jenefer Southwick Physicians Assistant  FCI Sandstone    DEMAND FOR JURY TRIAL
Nurse Nelson FCI Sandstone RN
Official and/or Personal Capacities where applicable       YES **X**   NO___

                Defendant(s).

(Enter the full name(s) of ALL defendants in
this action.  Please attach additional sheets
if necessary).

### COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER
### 42 U.S.C. § 1983 / BIVENS ACTION

I. PREVIOUS LAWSUITS

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved


SCANNED
DEC 1 4 2020
U.S. DISTRICT COURT MPLS

in this action or otherwise relating to your imprisonment in the last three years?
- ☐ Yes
- ☒ No

B. If you answer to (a) is "yes", describe each lawsuit in the space below.

    1. Parties to the previous lawsuit:

        Plaintiffs:

        Defendants:

    2. Court (If federal court, name the district. If state court, name the state and county.):

    3. Case Number:

    4. Name of judge assigned to the case:

    5. Cause of action (Cite the statute under which you filed and write a brief statement of the case):

    6. Disposition or final determination of the case (for example, dismissed or appealed).

    7. Approximate date of filing the lawsuit:

    8. Approximate date of disposition or final determination of the lawsuit:

***Attach a copy of the disposition or final determination of the lawsuit if it was filed in a court other than the U.S. District Court for the District of Minnesota.***

If there was more than one lawsuit, describe the additional lawsuits on a separate sheet of paper answering the same questions in the same order as above in Question 1(b). Label this information as Question 1(b).
Check here if additional sheets of paper are attached. ☐

II. PRESENT PLACE OF CONFINEMENT     FCI Sandstone

A. Is there a prisoner grievance procedure in the institution?

    ☒ Yes

    ☐ No

B. Did you present the facts relating to your complaint in the prisoner grievance procedure?

    ☒ Yes

    ☐ No

C. If you answered "yes" to question II.B.:
   1. What steps did you take:
           Federal Tort Claim
   2. What was the result?
           Denied

***Attach a copy of the decision or disposition received from the prisoner grievance procedure.****
    Copy of Tort Denial attached

D. If you answered "no" to question II.B., explain why you did not present the facts relating to your complaint in a prisoner grievance procedure.

III. PARTIES

List your name, prisoner number, address and telephone number. Do the same for any additional plaintiffs. Attach an additional sheet of paper, if necessary.

A.    Name of Plaintiff:  Mario Ferbo Mancini

    Prisoner Number   11007-041

    Address    FCI Sandstone
               PO Box 1000
               Sandstone, Minnesota  55072

Additional Plaintiffs:

Provide each defendant's full name, official position, and place of employment. Attach additional sheets of paper, if necessary.

B.  Name:                Federal Bureau of Prisons
                         Federal Department of Justice
    Official Position:   PO Box 999
                         Sandstone, Minnesota  55072
    Employer's Address:

Warden Fikes  PO Box 999, Sandstone MN  55072
       Additional Defendants:
Jenefer Southwick  Physicians Assistant,  PO Box 999, Sandstone MN  55072
Dr. Mayer  Clinical Director  PO Box 999, Sandstone MN  55072
Heidi Voss  Health Services Administrator  PO Box 999, Sandstone MN  55072
Nurse Nelson  Registered Nurse  PO Box 999, Sandstone MN  55072
Dr. Jarod Broadway  Neurosurgeon, St. Mary's Hospital, Essentia Health, Duluth Minnesota

NOTE: IF THERE ARE ADDITIONAL PLAINTIFFS OR DEFENDANTS, PLEASE PROVIDE THEIR NAMES AND ADDRESSES ON A SEPARATE SHEET OF PAPER.
Check here if additional sheets of paper are attached: ☐
Please label the attached sheets of paper as II.A. for Plaintiffs and II.B. for Defendants.

IV. STATEMENT OF THE CLAIM

Describe in the space provided below the basic facts of your claim. Describe how each individual defendant is personally involved, including dates, places and specific wrongful acts or omissions by each defendant. Each factual allegation should be provided in separately lettered paragraphs, beginning with letter A. Do not make any legal arguments or cite any cases or statutes.

A. Please see attachment

6

Please see attachment

Attach additional sheets of paper as necessary.
Check here if additional sheets of paper are attached: ☒
Please label the attached sheets of paper to as Additional Facts and continue to letter the paragraphs consecutively.

V. REQUEST FOR RELIEF

State briefly exactly what you want the Court to do for you. Do not make any legal arguments or cite any cases or statutes.
- Find for the Plaintiff in the amount of $750,000.00
- Find who violated Plaintiff's 8th Amendment rights against cruel and unusual punishment and any other constitutional right's which may have been violated.
- Order the BOP to allow for Plaintiff to have a pillow to adjust surgically repaired neck while sleeping.
- Demand a settlement resolution between the Plaintiff and the Defendants
- Order the BOP to represcccribe the daily dose of Gabapetin/Neurontin as prior to surgery while in BOP custody
- Find if it is unlawful for Sandstone HS to use unlicensed inmates as Physical Therapists.

I (We) hereby certify under penalty of perjury that the above complaint is true to the best of my (our) information, knowledge, and belief.

Signed this 10th   day of December , 20 20

Signature(s) of Plaintiff(s)   _Mario Mancini_

7

CASE 0:20-cv-02532-ECT-DTS   Doc. 1   Filed 12/14/20   Page 6 of 9

RECEIVED
BY MAIL
DEC 14 2020

SCANNED
DEC 14 2020

DEC 14 2020
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

IV. STATEMENT OF THE CLAIM — ATTACHMENT PAGE ONE

The Plaintiff had surgery On November 30th 2017. The surgery was performed at Essentia Health, St. Mary's hospital in Duluth Minnesota by Dr. Jarod Broadway, a neurosurgeon. The operation consisted of a multi-level C5-6, C6-7 disectomy at the cervical spine with fusion and stabilization using peak and human cadaver. Two "replacement" discs were used to replace the herniated cervical spine discs. Six (6) titanium screws and a plate were installed to stabilize the new "discs". Unfortunately, due to the deliberate indifference of FBOP medical staff and Essentia Health, the time delay between injury and surgery (the responsibility of the FBOP), and the time delay between Essentia Health's knowledge of upcoming surgery, and the time delay to surgery. The entire process took far too long from beginning to end. The Federal Bureau of Prisons and it's employees and Essentia Health and it's employees who were in charge of Plaintiff's custody and care, are responsible for what is now a verified permanent disability to the Plaintiff. Dr. Broadway's Nurse Practitioner, NP Rose at Essestia Health St. Mary's Duluth, along with the post operation neurologist' nerve conduction test results show nerve damage, atrophy, lack of response to direct stimulation by electrical current, buzzing, numbness and most importantly, pain and a strength loss at a 4/5 level at the right tricep, which will not, in the opinion of the neurologist, return. Plaintiff is three (3) years post operative. The neurologist' advice warns against repetitive flexation at the right tricep. Permanent injury has occurred due to the delay in care. documentation will show that even after an MRI and neurosurgeon consult, the FBOP still didn't fully believe the Plaintiff was in need of surgery, or that Plaintiff was suffering in excruciating pain for five (5) month's from initial injury on through to eventual surgery. Two month's after radiologist determination of C5-6, C6-7 herniation and nerve compression, the Health Services department at FCI Sandstone sent Plaintiff to the psychology department telling Plaintiff the problem may be psychological. That referral was after first sending Plaintiff to St. Mary's Essentia Health, Duluth for what was supposed to be surgery, however the FBOP misscheduled. Plaintiff was then taken back to FCI Sandstone and sent to psychology, and surgery was rescheduled. Meanwhile, Plaintiff was suffering in excruciating pain with two (2) herniated cervical discs, compressed and pinched nerves and loss of strength in right tricep that Health services were well aware of. Plaintiff was denied pain medication and was given an antidepressant as a replacement. Plaintiff was also not given the post operation pain medication or muscle relaxers prescribed by the operating neurosurgeon. Documentation at discovery will show that Plaintiff, in inter-prison communication with Health Service staff, pled over, and over again for help with pain management and constant worry and discussion about the weakness in right arm and concern for permanent damage if Plaintiff did not get into surgery immediately. Medical professionals are well aware of the importance of decompressing a compressed nerve so that permanent loss of function does not occur. Physicians Assistant J. Southwick has been Plaintiff's Primary Care Provider since 2015. Evidence will show that if not for Plaintiff (sneaking around) PA Southwick, Plaintiff would not have been seen by Dr. Mayer. Once Dr. Mayer administered a strength test, he diagnosed the weak arm and was very concerned. Dr. Mayer administered a cortisone shot to the area, and later requested an urgent MRI for within two (2) weeks, (which was in itself the beginning of delay in care as to Dr. Mayer). Unfortunately, 17 days passed before an MRI was completed. PA Southwick' first attempt at patient care consisted of instructing Plaintiff to acquire a tennis ball (There are no tennis balls within the prison) and place the ball between my back and a wall and rub around to relax the back muscles. When Plaintiff told PA Southwick that "there are no tennis balls", Southwick instructed Plaintiff to get a handball from the commissary the following week and pay for it himself. That was the event that caused Plaintiff to initially break the chain of command and go find Dr. Mayer for himself. Plaintiff Has permanent nerve damage, strength loss, muscle atrophy, pain in shoulder, neck, tricep, forearm, hand and finger. Numbness in right hand and finger. Periodic muscle spasms throughout the neck, arm and hand. The inability to hold flexation in tricep and bicep without cramping occurring. According to the medical professionals, the Plaintiff will be disabled for the rest of his life.

12-10-20   Mario Marino

IV. STATEMENT OF THE CLAIM — ATTACHMENT PAGE TWO

A.  <u>Nelson - Sandstone Nurse (RN)</u>

Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.

- July 1, 2017  7:00am Initial reporting of injury to RN Nelson - Health Services. He stated, "Nothing can be done until Wednesday the 5th because of the holiday weekend".
- July 1, 12:00pm  ordered to Health Services.  <u>RN Nelson administered first strength test to my right arm.</u>
- July 2, 2017  I went to Health Services and reported pain, numbness and strength loss in right arm.  I was told it would be three (3) days before I would be seen by my primary care provider.
- July 4, 2017 7:00am  I went to Health Services. I asked RN Nelson for Ibuprofen. He told me to "buy ibuprofen from the prison commissary". He then relented and gave me ibuprofen on June 5, 2017.
- August 19, 2017  7:00am  I went to Health Services in pain. RN Nelson said that "I needed to go talk to the psychology department". He stated, (implied) that, "maybe my issues are psychological".
  This statement by RN Nelson was eight (8) days after MRI report and diagnosis of the two (2) Herniated cervical discs was reported to Health Services by the MRI Radiologist and eight (8) days after Health Services had approved an outside neurological consultation at St. Mary's Essentia Health, Duluth.
- August 19, 2017 11:30am  I went to Health Services and received a shot of Toradol from RN Nelson who had to call and get permission from a doctor on call.
- October 19, 2017 I was ordered to the Psychology Department of a directive from Health Services Two (2) months after RN Nelson first stated that my issue may be psychological and two (2) months after my MRI results and two (2) months after my consultation with neurosurgeon at St. Mary's Essentia Health and nearly two (2) months after surgery was approved.
  RN Nelson's action show an Eight amendment violation against cruel and unusual punishment.

B.  <u>Jenefer Southwick - Physicians Assistant</u>

Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.

- July 5, 2017 7:30am  Callout to Health Services.  <u>PA Southwick administered the second strength test to my right arm.</u>  I explained my symptoms of pain, numbness, strength loss. I was told to get a tennis ball and rub it on my back while standing against a wall and massage my muscles. There are no tennis balls in prison.  I was then told to buy handballs on the commissary the next week.  I was denied a trigger point injection also.

C.  <u>Jenefer Southwick - Physicians Assistant</u>

Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.

August 7, 2017  MRI performed.
- August 11, 2017  Appointment with PA Southwick.  I am told that it can be three (3) to four (4) months before a consultation may happen with a neurosurgeon. MRI results had come back and report showed herniation of C5-6, C6-7 cervical spine with cord compression.  PA Southwick treated MRI results as a non emergency.
- August 22, 2017  8:30am  Appointment with PA Southwick. Again, Plaintiff is told that there would be a consult with neurosurgeon, which we had spoke about eleven (11) days prior on August 11, 2017.

12-10-20  [signature]

IV. STATEMENT OF THE CLAIM — ATTACHMENT PAGE THREE

C. August 22, 2017 Continued

    PA Southwick denied ibuprofen request, stating that Plaintiffs pain level did not warrant a prescription of ibuprofen. This is eleven (11) days after MRI results showing herniation and cord compression.
PA Soutwick looked up my commissary spending to see if I had been purchasing ibuprofen. I stated to PA Southwick at this time, "Do you think that I am lying about my injury?" PA Soutwick stated, "she didn't appreciate me questioning her ability". It was then that Southwick confined me to my housing unit.

- August 31, 2017  7:30am  PA Southwick mentioned Dr. Broadways report and recommendation. She asked if I wanted surgery? We had this discussion and it is now twenty (20) days since Health Services knew of MRI results and injury. I asked "why are we not making this a priority? PA Southwick stated that "I had been dealing with this for years". I stated that "I have never dealt with weakness". and "Three (3) medical professionals, you (Southwick), Dr. Mayer, and RN Nelson have administered strength tests, and we have the MRI and consultation from the neurosurgeon, why are we not making this a priority?" PA Southwick stated that "Dr. Broadway (St. Mary's Essentia Health Neurosurgeon) report didn not state an urgency". I told PA Southwick to call Dr. Broadway because he told me that if it were up too him, Plaintiff would be in surgery the following day after consultation, but unfortunately scheduling was in the control of the FBOP.
- October 18, 2017  Admitted to St. Mary's Essentia Health, Duluth for neurosurgery. Sent back to prison without surgery being performed due to FBOP Sandstone Health Services not isolating Plaintiff the night before surgery so that Plaintiff would not have food in stomach for 12 hours prior to surgery, which is standard operating procedure within the FBOP.

D.    <u>Dr. Mayer - Health Director - Sandstone Primary Care Physician</u>

    Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.

- July 5, 2017  2:30pm  I sought out Dr. Mayer and explained my symptoms. He took my vitals and administered a strength test. <u>This is the third (3rd) strength test within a span of four (4) days by three (3) different Health Care providers</u> and this is the Primary Care Provider and Director of Health Services for FBOP Sandstone. Dr. Mayer administered a Trigger Point injection.
- July 6, 2017  I sought out Dr. Mayer and he told me to come see him on August 20, 2017.
- July 20, 2017  <u>Dr. Mayer performed the fourth (4) strength test on my right arm.</u> He then sent a request for an URGENT MRI to be done by July 31, 2017. Dr. Mayer stated that he was very concerned about Plaintiffs right arm weakness and that it could possibly be permanent.
This was the last time that Plaintiff ever saw Dr. Mayer about this medical issue. The urgent MRI took 17 days to happen.

E.    <u>Heidi Voss - Health Service Administrator</u>

    Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.

- July 5-20, 2017  The only interaction Plaintiff ever had with Health Service Administrator H. Voss was in the waiting room at Health Services. Voss told me that "I have been dealing with my symptoms for years and that I would be fine". I told her, "Ms. Voss, my arm is dead, I can't use it, I have never had weakness in my arm before". Voss walked away from me without speaking another word.

12-10-20 *[signature]*

IV. STATEMENT OF THE CLAIM — ATTACHMENT PAGE FOUR

F. <u>Dr. Jarod Broadway - Neurosurgeon, St. Mary's - Essentia Health, Duluth</u>

Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.
- August 29, 2017  Initial consultation with Dr. Broadway at his office in Duluth, MN.
- November 30, 2017  Surgery performed for cervical spine C5-6, C6-7 herniation and cord compression.

G. <u>Warden Fikes and the Federal Bureau of Prisons</u>

Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.
- The Warden and the Federal Bureau of Prisons are ultimately in charge of the custody and care of each and every prisoner assigned to the FBOP and Sandstone Prison.

H. <u>Dr. Mayer - Health Director - Sandstone Primary Care Physician</u>
<u>Heidi Voss - Health Service Administrator</u>
<u>Jenefer Southwick - Physicians Assistant</u>
<u>Dr. Jarod Broadway - Neurosurgeon, St. Mary's - Essentia Health, Duluth</u>
<u>Warden Fikes and the Federal Bureau of Prisons</u>

Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.

- 153 days elapsed between initial reporting of Plaintiffs injury, and final surgery.
- 115 days elapsed between MRI and final surgery.
- 91 days elapsed between Plaintiffs consultation with Dr. Broadway at St. Mary's Essentia Health, Duluth MN and final surgery.
- 89 days elapsed between PA Southwick's pre-surgery consultation with Plaintiff and final surgery.
- 17 days elapsed between the time Dr. Mayer submitted an Urgent MRI request and the MRI.
- 132 days elapsed between Dr. Mayer's URGENT MRI request and Plaintiffs surgery.

   The Plaintiff is not responsible for the delay in care that ultimetely led to the permanent damage to Plaintiffs physical being.  The time delay is the reason for the permanent damage to the Plaintiff.  Health Care providers are responsible.  Health Care providers at this level knew or should have known that the time delay herniated discs and cord comression most always lead to damage that is irreversible.  Documentation will prove that the Plaintiff did everything that a prisoner can possibly do to notify those in charge of his care, that something was dangerously wrong, and that he needed there help.  Plaintiff pleaded with his providers.  The Plaintiff at first wasn't believed, he was sent to phychology, he was told to buy a ball and rub it on his back, he had to sneak around to get a visit with the Clinical Health Director.  PA Southwick was visibly upset when Plaintiff asked her if she thought that he was faking.  This was after the MRI results came back with proof of a very serious spine and neck injury.  Dr. Mayer disappeared from the scene after submitting the urgent MRI request.  Health Service Administrator H. Voss all but ignored the Plaintiff.  Was Dr. Broadway complicit?  Who's job was it, and what took so long for the Plaintiff to get surgery?  Is this standard procedure?  Plaintiff had been taken out of Sandstone for far less serious medical issues in the past.  1. <u>9 days</u> after not having a bowel movement Plaintiff was taken out for an emergeny enegma.  2. <u>30 days</u> for a tooth extraction.  3. <u>30 days</u> for a cortisone shot (approximate).  Why did it take 91 days between the neurosurgery consultation and final surgery?  The FBOP and St. Mary's Essentia Health are responsible for the damage caused to the Plaintiff.  The FBOP and St. Mary's Essentia Health should be held responsible for the damage caused to the Plaintiff.

12-10-20  *[signature]*