UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Mario Ferbo Mancini,

    Plaintiff,

v.

United States of America - FTCA Claim; Federal Bureau of Prisons; Warden Fikes; Dr. Mayer - Clinical Director; Heidi Voss - Health Service Administrator; Jenefer Southwick - Physician's Assistant; Nurse Nelson RN; Dr. Broadway - Essentia Health Duluth MN; *Official and Individual (Personal) Capacities,*

    Defendants.

Case No. 20-cv-2532 (ECT/DTS)

**REPORT AND RECOMMENDATION**

---

Plaintiff Mario Ferbo Mancini brings claims under the Federal Tort Claims Act (FTCA) and *Bivens*[1] relating to medical care for his neck injury resulting in permanent damage and partial loss of use of his right arm. The United States, Warden Fikes, and Jenefer Southwick (Federal Defendants)[2] move to dismiss on the ground that Mancini did not exhaust his *Bivens* claims and did not file his FTCA lawsuit within the six-month statute of limitations. Dkt. No. 34. Dr. S. Jarod Broadway moves to dismiss because he

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).
[2] The Government represents the United States, Federal Bureau of Prisons, Fikes, and Southwick in this lawsuit. It states that Heidi Voss and Dr. Mayer are not current government employees. *See* Fed. Def. Mem. 1 n.1, Dkt. No. 35. The case docket indicates they have not been served with this lawsuit. Dkt. No. 22 (Process Receipt and Returns) at 1, 2. The docket also shows that Nurse Nelson has not been served. *Id.* at 3.

is not a proper defendant in either a *Bivens* or FTCA action. Dkt. No. 44. For the reasons stated below, the Court recommends that Dr. Broadway's motion be granted, and that the Federal Defendants' motion be granted with respect to Mancini's *Bivens* claim but denied with respect to his FTCA claim against the United States.

**I.      Federal Defendants' Motion to Dismiss**

The Federal Defendants move to dismiss Mancini's *Bivens* and FTCA claims under Rule 12(b)(1) alleging the Court lacks subject matter jurisdiction because Mancini failed to exhaust his *Bivens* claim and failed to file his FTCA claim within the six-month limitations period. To determine whether the Court has subject matter jurisdiction to hear a claim pursuant to Rule 12(b)(1), the Court may consider the entire record and is not limited to the pleadings. *Osborn v. United States*, 918 F.2d 724, 728-29 (8th Cir. 1990). When a jurisdictional question exists, the "court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* at 730 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

**A.      FTCA**

The Federal Tort Claims Act is a limited waiver of sovereign immunity, making the federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment. *United States v. Orleans*, 425 U.S. 807, 813 (1976). Under the FTCA a plaintiff may sue the United States for damages:

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). An individual federal employee cannot be sued under the FTCA for torts committed during the course of his or her employment. *Knowles v. United States,* 91 F.3d 1147, 1150 (8th Cir. 1996). The United States is the only proper defendant in an action brought under the FTCA. *Id.*

Before filing a lawsuit, the would-be plaintiff must present his claim to the appropriate federal agency, in this case the BOP. 28 U.S.C. § 2675(a). The lawsuit must be filed within six months of the agency's denial of the claim. *Id.* § 2401(b). This limitations period is subject to equitable tolling. *United States v. Wong*, 575 U.S. 402, 420 (2015). *Wong* did not establish the standard for evaluating when equitable tolling of the FTCA limitations period is justified, but the Supreme Court has held that "[g]enerally, a litigant seeking equitable tolling bears the burden of establishing two elements: (2) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

The Federal Defendants seek to dismiss Mancini's FTCA claim under Rule 12(b)(1) for lack of jurisdiction on the grounds that he did not file his FTCA lawsuit within the six-month limitations period and he is not entitled to equitable tolling. Mancini asserts he was diligently moving his lawsuit forward throughout the relevant June to November 2020 time period; spent many hours in the law library researching and seeking advice on it, despite limited access due to the pandemic; was relocated to different housing units several times during that time period; and would have mailed his lawsuit on time if he had not been diagnosed with Covid-19 and put in quarantine, from which he was released one day after the limitations period expired. *See* Pl. Mem. 5-7, Dkt. No. 50; Mancini Decl., Dkt. No. 52. Mancini also took steps to document his trust fund balance and to expedite

payment of fees to a medical expert review company to support his claim. *See* Anderson Decl. Ex. D, Dkt. No. 63-4 at ECF page nos. 1-2 (Nov. 3, 2020 message) and 6-8 (Aug. 20, 2020 message); Dkt. No. 1-3 (medical expert invoice and payment receipt).

The Federal Defendants contend that, even though he was impeded toward the end of the limitations period by his Covid-19 diagnosis and quarantine, he could have filed the lawsuit sooner. They also assert that prison records show he may not have been as diligent as he claims earlier in the six-month period. *See* Fed. Def. Mem. 14-15 & Reply Mem. 2-4, Dkt. Nos. 35, 62.

There is no dispute that Mancini did not file the lawsuit within the six-month limitations period. The BOP denied reconsideration of his claim on May 29, 2020, so his deadline was November 29, 2020. Dkt. No. 1-2 (denial letter). He signed his lawsuit on December 10, 2020 and it was received by mail and filed on December 14, 2020, making it about two weeks late.[3] Dkt. No. 1. He filed an Amended Complaint on February 1, 2021. Dkt. No. 7. It is also undisputed that he was diagnosed with Covid-19 on November 17, 2020 — 12 days before the FTCA limitations period expired — and placed in quarantine until November 30, 2020. Kensy Decl. ¶ 7 & Ex A, Dkt. Nos. 64, 64-1.

The Court finds Mancini was diligent under the extraordinary circumstances here so as to warrant equitable tolling of the FTCA limitations period. Six months is a relatively short time frame for a statute of limitations. In this instance, the six-month period commenced to run during the middle of the Covid-19 pandemic at a prison in lockdown.

---

[3] The Federal Defendants argue he is really two months late because his original Complaint, though asserting his FTCA claim, named the BOP rather than the United States as defendant. The United States was not added to the caption until the Amended Complaint was filed on February 1, 2021. Dkt. No. 7. The Court finds this difference does not affect its analysis here.

4

Access to both the physical Law Library and to the TRULINCS computer terminals providing electronic access to legal materials (ELL or "electronic law library") was severely curtailed during the relevant June to November 2020 time period. In addition, during that time Mancini was in four different housing units, the last being his Covid-19 quarantine. Kensy Decl. ¶¶ 4-7 & Ex A, Dkt. Nos. 64, 64-1. During each move he had to pack and move his own property. *Id.* ¶ 8.

Due to the pandemic, FCI-Sandstone "modified operations to limit inmate movement and the potential spread of COVID-19 throughout" the facility. Anderson Decl. ¶ 6, Dkt. No. 63. The prison issued "Updated Procedures for the Law Library during Modified Operations." *Id.* Ex. C, Dkt. No. 63-3. The Updated Procedures limited inmates to one hour of library time per week,[4] required each inmate to request library time a week in advance, and stated that inmates might only receive 30 minutes notice of their scheduled Law Library time. *Id.* If an inmate was not present and ready when staff came to escort the group to the Law Library, the inmate could not make up the time that week but instead had to submit a request for the following week. *Id.* The written procedures caution that "there is very little reliable scheduling" because Education Department staff were dispersed among various posts throughout the compound. *Id.* If an inmate needed more than one hour per week in the Law Library, staff would try to accommodate him if time permitted, in particular if a legal deadline was approaching, though such deadline had to be verified by his unit team. *Id.*

---

[4] Anderson's Declaration states that as of March 30, 2020 approximately four hours per week were set aside for each housing unit to visit the Law Library, citing attached Exhibit B. *See* Anderson Decl. ¶ 7. But Exhibit B contains information for 2021, not 2020. *See* Dkt. No. 63-2. In any event, it appears both Mancini and the Federal Defendants agree that each individual was normally limited to no more than one hour per week.

5

These new procedures apparently went into effect on July 9, 2020, though it is not entirely clear because Anderson's Declaration says there were "new procedures to access the ELL," meaning electronic legal materials, whereas the procedures described in Exhibit C appear to relate to the physical Law Library containing resources beyond the mere use of ELL-enabled TRULINCS computer terminals, such as copying and printing. *See* Anderson Decl. ¶ 8 & Ex. C. Ordinary TRULINCS terminals were located in housing units, but ELL-enabled terminals were only available in the Education Department until some unspecified date in November 2020, at which time ELL terminals were relocated to each housing unit. *Id.* ¶¶ 2, 4-5, 11.

The Federal Defendants take issue with Mancini's claim of spending "many hours" in the Law Library during the earlier part of the June to November 2020 limitations period. They point to TRULINCS usage reports indicating he was only logged on to the ELL function for a total of about five hours. *See id.* ¶¶ 13-14 & Exs. E & F, Dkt. Nos. 63, 63-5, 63-6. But this report does not (and cannot) document all the time he spent working on his lawsuit or even all the time he spent in the Law Library; it simply records his ELL usage on TRULINCS. Mancini made at least three week-in-advance requests for Law Library use pursuant to the Updated Procedures: on July 7, September 1, and November 2, 2020. *See id.* ¶ 10.d, e, & f, & Ex. D, Dkt. No. 63-4 at ECF page nos. 3, 4, 17.[5] It is not clear whether such advance requests were required before July 2020.

---

[5] While the Anderson Declaration ¶ 10 says Mancini requested "ELL" access on these dates, the documents themselves show requests for the "law library," not specifically "ELL." In addition, the TRULINCS usage report shows he accessed ELL on dates in June, July, August, October, and November, and not all of those dates have corresponding week-in-advance "law library" requests, according to the records submitted by the Federal Defendants. *See* Dkt. Nos. 63-4, 63-6. In short, the TRULINCS ELL usage report is not a full picture of Mancini's diligence.

6

But regardless whether Mancini's Law Library time in particular amounted to "many" hours prior to his November 2020 Covid-19 diagnosis and quarantine, the Court finds the record is sufficient to demonstrate both diligence and extraordinary circumstances. His situation is thus distinguishable from cases cited by the Federal Defendants. *See, e.g., Rodd v. Lariva,* 515 F.Supp.3d 1006, 1014 (D. Minn. 2021) (in FTCA case, finding equitable tolling not applicable because lawsuit was not filed until a year after the limitations period expired, there was "no reason to believe" he was diligently pursuing his claims, and "no extraordinary circumstances" stood in the way of timely filing suit); *United States v. Mata,* No. 14-cr-156, 2021 WL 2435830, at *3 (D. Minn. June 15, 2021) (denying equitable tolling of 1-year period to petition to vacate criminal sentence because, although Covid-19 pandemic and resulting lockdown was an extraordinary circumstance, inmate was not diligent either during the nine months pre-pandemic (*i.e.,* before March 2020) or the three months thereafter until his 1-year limitations period expired, and inmate did not file his § 2255 petition until nine months after the deadline); *Fleming v. Wells Fargo Home Mortgage,* No. 15-cv-2683, 2015 WL 5158707, at *4 (D. Minn. Sept. 2, 2015) (in mortgage rescission case, rejecting equitable tolling because plaintiff's attempted rescission occurred three years after the deadline expired and she pleaded no facts to show either diligence or extraordinary circumstances). Accordingly, the Court recommends denying the Federal Defendants' motion to dismiss Mancini's FTCA claim as barred by the six-month limitations period.

 B. *Bivens* **Claim**

Mancini brings a *Bivens* action alleging prison officials were deliberately indifferent in violation of the Eighth Amendment with respect to medical care related to his neck

7

injury and delayed surgery, resulting in permanent damage and partial loss of use of his right arm. The Federal Defendants move to dismiss the claim without prejudice, arguing the Court lacks subject matter jurisdiction because Mancini failed to administratively exhaust his claim. The Court agrees and recommends his *Bivens* claim be dismissed.

  1. **Amended Complaint**

The United States first argues that it appears Mancini abandoned his *Bivens* claim because he did not include it in his Amended Complaint. Fed. Def. Mem. 2, 7, Dkt. No. 35. Mancini denies this, stating he did not drop the claim, he added page 5 to the other 4 pages setting forth his claims. Pl. Mem. 5, Dkt. No. 50. The Amended Complaint says "IV. STATEMENT OF THE CLAIM - ATTACHMENT PAGE FIVE," Dkt. No. 7 at ECF page no. 6, and refers to the other 4 pages that are included in the original Complaint: "Evidence of the Government's failed responsibilities through the FBOP health service department is proven in SECTION IV. STATEMENT OF THE CLAIM - ATTACHMENT PAGES ONE THROUGH FIVE respectively," *id.* The Amended Complaint also explicitly mentions his *Bivens* claim. *Id.* at ECF page nos. 1, 3, 5. The original Complaint contains four pages similarly labeled as "IV. STATEMENT OF THE CLAIM - ATTACHMENT PAGE ONE . . . TWO … THREE … [and] FOUR." Dkt. No. 1 at ECF page nos. 6-9. The Court finds that Mancini did not abandon his *Bivens* claim and treats Dkt. Nos. 1 and 7 together as the operative Amended Complaint.

  2. **Failure to Exhaust**

The Prison Litigation Reform Act (PLRA) requires Mancini to exhaust his administrative remedies before bringing a *Bivens* action:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

> correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *Porter v. Nussle,* 534 U.S. 516, 532 (2002) ("PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes"). The "boundaries of proper exhaustion" are defined by the prison's specific administrative requirements. *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court. *Id.* at 211. The benefits of exhaustion include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.* at 219.

However, the PLRA requires exhaustion of only "such administrative remedies as are available." 42 U.S.C. § 1997e(a); *Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018). The Supreme Court has said the availability of a remedy is "about more than whether an administrative procedure is 'on the books.'" *Id.* (quoting *Ross v. Blake*, 578 U.S. 632, 643 (2016)). An administrative remedy is not available or "capable of use," for example, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. An administrative remedy is also unavailable "when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 643. In addition, an "administrative scheme might be so opaque that it becomes, practically speaking, incapable of use," *i.e.,* "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 643-44.

Mancini concedes he did not exhaust his *Bivens* claim but contends administrative remedies were "Unavailable and/or Futile." Am. Compl. Sec. II.B. & D, Dkt. No. 7 at ECF page no. 3. However, his pleading contains no factual allegations to support or explain why administrative remedies were not available or why it would have been futile to pursue them. *See* Dkt. Nos. 1, 7.

Mancini's *Bivens* claim centers on a roughly five-month period between the time he was diagnosed with two herniated discs and reported symptoms and injury to prison officials in late June-early July 2017, and the time of his surgery on November 30, 2017. *See* Dkt. No. 1 at ECF page nos. 6-9. He contends that staff ignored, downplayed, and/or inadequately treated his medical complaints. *Id.* An original surgery date of October 18, 2017 had to be rescheduled because the prison had not isolated him the night before so that he would not have food in his stomach for 12 hours before surgery. *Id.* at 8. He alleges the delay in care resulted in permanent damage. *Id.* at 9.

Mancini argues that (1) the "prison administration used machination to foil attempt at a remedy," and (2) using the grievance procedure would have been futile because there was not enough time to do so. Pl. Mem. 3-4, Dkt. No. 50.

First, he claims he was "duped" into thinking surgery was imminent, and because it was imminent there was no cause to file a grievance. *Id.* at 3. But this argument makes no sense. His claim is based on delay in receiving care and delay in performing surgery. To the extent he claims that his November 30, 2017 surgery did not resolve his medical issue and the reason is because the surgery had been delayed by six weeks, that claim did not and could not have existed until some point post-surgery, *i.e.,* when he realized he was left with some permanent damage despite the surgery. So, Mancini is correct that

"there was no cause to file [a] grievance" pre-surgery, but the reason is that the claim did not yet exist, not because anyone thwarted any attempt to grieve it.

To the extent he claims that, apart from the surgery itself, the delay in care had harmed him, he could have pursued that claim administratively at whatever point he deemed he had suffered the harm, either pre- or post-surgery. He offers no facts or arguments that he was obstructed from doing so.

Rather, Mancini argues that pursuing administrative remedies would have been futile because the "time to grieve was longer than the time to get to surgery 3-4 months according to BOP documents." *Id.* at 3. He contends "the time from initial injury to first scheduled surgery did not leave enough time to file grievances. The time between rescheduling of surgery, and surgery did not leave time to complete grievance process either." *Id.* at 4. Those statements may be true, but are beside the point. Those facts would only matter (if at all) if the only purpose of making a claim was to obtain the surgery. But his claim is for the entire arc of allegedly deficient medical care from the time of injury through surgery after which he was left with permanent damage to his arm. He was not obstructed by prison officials from pursuing his claim administratively, and there is no evidence that doing so would have been futile.

He cites *Tensley v. Outlaw*, No. 2:10CV00014, 2010 WL 2671782 (E.D. Ark. July 2, 2010), but that case is readily distinguishable. First, *Tensley* is a habeas case, not a *Bivens* action. In addition, requiring the inmate to initiate the prison grievance procedure after he filed his habeas petition would have mooted his entire claim regarding his request under the Second Chance Act for home detention or placement in a Residential Reentry Center (RRC). *Id.* at *2. Prison officials had failed to perform a required assessment 17-

19 months prior to his projected release date, which took away his opportunity to follow the grievance procedures which typically take about five months to complete. *Id.* at *1-2. By the time he filed his habeas petition he was less than a year from his release. *Id.* Thus, the court excused his failure to administratively exhaust his claim. *Id.* at *2.

No such situation exists here, where Mancini seeks money damages for his claim relating to his medical care. He did not use a grievance procedure that was available to him. Because he did not exhaust his administrative remedies, his *Bivens* claim must be dismissed.

### C. Bureau of Prisons

The BOP is not a proper defendant in this lawsuit. A federal agency cannot be sued in a *Bivens* action, *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994), or under the FTCA, *Duncan v. Dep't of Labor*, 313 F.3d 445, 447 (8th Cir. 2002). Thus, the BOP should be dismissed from this lawsuit.

## II. Dr. Broadway's Motion to Dismiss

Dr. Broadway moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure alleging that Mancini fails to state a claim against him because he is not a proper defendant in either a *Bivens* or FTCA action. Motion & Mem., Dkt. Nos. 44, 46. To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). In determining whether to grant a dismissal motion, courts "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the

complaint whose authenticity is unquestioned; without converting the motion into one for summary judgment." *Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir. 2013) (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)) (internal quotation marks omitted).

Mancini has not opposed the motion,[6] and dismissal is warranted on that basis. Further, as discussed above, the only proper defendant in an FTCA lawsuit is the United States, *Knowles,* 91 F.3d at 1150, and thus any purported FTCA claim against Dr. Broadway must be dismissed. As to Mancini's *Bivens* claim, Dr. Broadway is not a proper defendant in a *Bivens* lawsuit because he was not a federal employee when he committed the acts or omissions Mancini complains of. Rather, he was a private physician with Essentia Health/St. Mary's Hospital in Duluth, Minnesota. Broadway Mem. 8-9, Dkt. No. 46.[7] *Bivens* does not authorize a cause of action against a private health care provider when state tort law provides an adequate alternative process, such as a state medical malpractice action. *See Minneci v. Pollard*, 565 U.S. 118, 120-26 (2012); *Flores v. United States,* 689 F.3d 894, 902-03 (8th Cir. 2012).

Accordingly, for all the above reasons, the Court recommends that Dr. Broadway's motion to dismiss be granted.

---

[6] Mancini filed only one opposition memorandum in response to the separate dismissal motions brought by the Federal Defendants and Dr. Broadway. Mancini's memorandum was filed on September 29, 2021 [Dkt. No. 50] and does not mention Dr. Broadway or address the dismissal arguments Dr. Broadway raised in his memorandum [Dkt. No. 46] which was filed and served on Mancini on September 7, 2021 [Dkt. No. 48].

[7] Dr. Broadway did not submit a sworn declaration in support of his dismissal motion stating he was not a federal employee. Statements in a legal memorandum are not evidence. However, Mancini does not dispute that Dr. Broadway was not a federal employee but rather a private physician with Essentia Health/St. Mary's Hospital. Documents in the record show that attempted service of the lawsuit on Dr. Broadway at St. Mary's Duluth Hospital was not successful because he no longer worked there. Dkt. No. 24. He was later served at a medical practice in Fargo, North Dakota. Dkt. No. 49.

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court RECOMMENDS THAT:

1. The Federal Defendants' Motion to Dismiss [Dkt. No. 34] be GRANTED IN PART and DENIED IN PART:

    a. That the motion granted with respect to the *Bivens* claims and that those claims be dismissed without prejudice in their entirety for failure to exhaust;

    b. That the motion be denied with respect to the FTCA claim against the United States; but that any purported FTCA claims against the Bureau of Prisons and all individual Defendants be dismissed because they are not proper defendants in an FTCA action.

2. Dr. S. Jarod Broadway's Motion to Dismiss [Dkt. No. 44] be GRANTED.

Dated: January 31, 2022                  <u>s/David T. Schultz</u>
DAVID T. SCHULTZ
U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).