UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 0:20-cv-02532-ECT-DTS


MARIO FERBO MANCINI,

       Plaintiff,

   v.

FEDERAL BUREAU OF PRISONS;
WARDEN FIKES, Official And/Or Personal
Capacities Where Applicable; DR. MAYER,
Clinical Director, Official And Individual (Personal)
Capacities; DR. BROADWAY, Essentia Health
Duluth Mn, Official And Individual (Personal)
Capacities; HEIDI VOSS, Health Service
Administrator, Official And Individual (Personal)
Capacities; JENEFER SOUTHWICK, Physicians
Assistant, Official And Individual (Personal)
Capacities; UNITED STATES OF AMERICA –
FTCA CLAIM,

       Defendants.

**UNITED STATES OF
AMERICA'S ANSWER
TO AMENDED COMPLAINT**

Defendant the United States of America, for its Answer to the Complaint (Doc. No.

7)[1], states as follows:

**First Defense**

Plaintiff's claim is barred as the action was not begun within six months after the

date of mailing, by certified or registered mail, of notice of final denial of the claim by the

agency to which it was presented. 28 U.S.C. § 2401(b).

---

[1]  ECF Document Number 7, although simply entitled "Complaint," is in fact
an amended complaint filed in response to court order.  Because all claims
apart from those under the Federal Tort Claims Act (FTCA) have been
dismissed, this answer does not relate to other claims and is submitted only on
behalf of the sole remaining Defendant, the United States of America.

### Second Defense

The Federal Tort Claims Act limits recovery, if any, to the amount of plaintiff's administrative claim.

### Third Defense

Plaintiff's recovery, if any, is limited to amounts recoverable under the Federal Tort Claims Act.

### Fourth Defense

To the extent the United States is found liable in this matter, the United States is entitled to an offset or credit for any benefits provided or to be provided, or paid or to be paid to, plaintiff by the United States as a result of the injury alleged in the Complaint, and is further entitled to an offset or credit for any other benefits received by plaintiff not excluded from consideration by the collateral source rule, as a result of the same.

### Fifth Defense

Plaintiff is barred from recovering damages to the extent he failed to mitigate his damages.

### Sixth Defense

The Minnesota doctrine of comparative fault applies to eliminate or reduce any recovery against the United States.  Minn. Stat. § 604.01.  In the event the Court finds the United States negligent, which negligence the United States denies, then the negligence of plaintiff exceeded that of the United States and the plaintiff's claim is therefore barred.  In the alternative, plaintiff's negligence contributed to his alleged injuries and plaintiff's recovery must be reduced in proportion to his comparative fault.

2

**Seventh Defense**

Plaintiff is not entitled to a jury trial in a Federal Tort Claims Act Case.

**Eighth Defense**

Plaintiff failed to attach an affidavit to the Complaint as required by Minn. Stat. § 145.682.

**Ninth Defense**

Any recovery by plaintiff from the United States is subject to the availability of congressionally appropriated funds.  42 U.S.C. § 233(k).

**Tenth Defense**

Plaintiff is not entitled to recover any separate amount for attorney's fees, and any attorney's fees must be paid out of any recovery by judgment or otherwise.  28 U.S.C. § 2412.  If appointed or retained, plaintiff's counsel may not charge, demand, receive, or collect for services rendered fees in excess of 25 per cent of any judgment awarded under the FTCA.  28 U.S.C. § 2678.

**Eleventh Defense**

Plaintiff is not entitled to prejudgment interest under 28 U.S.C. § 2674.

**Twelfth Defense**

Plaintiff is only entitled to post-judgment interest to the extent specifically provided by federal law.

**Thirteenth Defense**

The Court lacks subject matter jurisdiction and/or the Complaint fails to state a claim against the United States based upon an act or omission of an employee of the

Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion is abused.  28 U.S.C. § 2680(a).

## Fourteenth Defense

The Court lacks subject matter jurisdiction and/or the Complaint fails to state a claim against the United States because the United States is not legally responsible for the acts or omissions of any person who provided health care to plaintiff or was otherwise involved in his case who at the time was a contractor and not an employee of the United States at the time of the allegations of the Complaint pursuant to 28 U.S.C. § 2671.

## Fifteenth Defense

Answering the specific allegations of the Complaint, the United States admits, denies, or otherwise avers as follows:

I.    PREVIOUS LAWSUITS[2]

A.    Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment in the last three years?  No

**RESPONSE:**  The United States admits, on information and belief, that plaintiff has not begun any other lawsuits in state or federal court dealing with the same facts involved in this action.  The United States lacks knowledge or information sufficient to form a belief

---

[2] The United States has included the topic headings from plaintiff's Complaint for ease of reference.  Use of these topic headings does not constitute an admission or acknowledgement by the United States of their relevance or accuracy.

4

as to the truth of the remaining allegations under Roman I; accordingly, those allegations

are denied.

II.     PRESENT PLACE OF CONFINEMENT

        A.     Is there a prisoner grievance procedure in the institution? Yes

        B.     Did you present the facts relating to your complaint in the prisoner grievance
procedure?

        Yes: (FTCA Claim)
        No: PLRA – Bivens

        C.     If you answered "yes" to question II.B.:
               1.     What steps did you take: Federal Tort Claim
               2.     What was the result? Denied

        D.     If you answered "no" to question II.B., explain why you did not present the
facts relating to your complaint in a prisoner grievance procedure. Unavailable and/or
Futile

**RESPONSE:**   The United States admits there is an administrative remedy process at FCI

Sandstone. The United States admits that on June 24, 2019, it received an administrative

tort claim from plaintiff (TRT-NCR-2019-06178) relating to the facts alleged in the

Complaint in this matter.   The United States further admits it denied TRT-NCR-2019-

06178, via certified letter dated November 27, 2019.  The United States admits it received

three requests for reconsideration from plaintiff on April 23, 2020, May 7, 2020, and May

11, 2020, and it denied those requests for reconsideration via certified letter dated May 29,

2020.  The United States lacks knowledge or information sufficient to form a belief as to

the truth of the remaining allegations under Roman II; accordingly, those allegations are

denied.

III.   PARTIES
    A.    Name of Plaintiff:        Mario Ferbo Mancini
            Prisoner Number        11007-041
            Address                PO Box 1000
                                        Sandstone MN 55072

**RESPONSE:** The United States admits plaintiff was an inmate at the Federal Correctional

Institution in Sandstone, Minnesota during the time of the alleged incident at issue in this

suit.

    B.    Name:                 The United States of America
            Official Position:        Government of the United States
            Employer's Address:     PO Box 999
                                        Sandstone MN 55072

            Additional Defendants:    Federal Bureau of Prisons, Warden Fikes, Dr.
                                        Mayer, PA Jenefer Southwick, HSA Heidi Voss,
                                        RN Nelson PO Box 999, Sandstone MN 55072
                                        And Dr. Jarod Broadway - Essentia Health, St.
                                        Mary's Hospital Duluth MN.

**RESPONSE:** The United States admits it is the sole proper Defendant in this matter, in

which all claims except those arising under the Federal Tort Claims Act (FTCA) have been

dismissed.  The United States denies that any individual Defendants remain in the case,

and denies any remaining allegations of Paragraph III.B.

IV.   STATEMENT OF THE CLAIM (FROM ATTACHMENT PAGE FIVE[3])

I.   The United States of America - Negligence

The United States of America and her agencies were negligent in respect to the delay in
care the Plaintiff suffered through for his neck injury/delay in surgery which caused
permanent injury/disability, partial loss of use of right arm, pain and suffering, numbness

---

[3] Found at Doc. No. 7, page 6.

in hand and arm, shooting pain throughout arm, the inability to "flex" right arm ever again, and most importantly, strength loss that is irreversible, per medical experts.

**RESPONSE:**  The United States denies the allegations of this subparagraph.


• The Government of the United States of America, being the supreme agency in control of occurrences and dictates as to The Federal Tort Claims Act (28 U.S.C. Sections 1346 and 2671 et seq.) is the authority and agency in which Tort claims are to be presented.

**RESPONSE:**  The United States admits it may be sued under the Federal Tort Claims Act,

28 U.S.C. § 1346, and denies any remaining allegations of this subparagraph.


• The negligence on behalf of the agency in charge of health care as to federal prisoners is handed down to the Federal Bureau of Prisons. This claim and the evidence presented in it shows that to due [sic] negligence/delay in care, the Plaintiff suffered loss to person that is irreversible.

**RESPONSE:**  The United States denies the allegations of this subparagraph.


• The loss can only be rectified in this paragraph with money damages.

**RESPONSE:**  The United States denies the allegations of this subparagraph.


• The FTCA calls for money damages to the Plaintiff if the United States is negligent as to negligency [sic] in health care provided to the Plaintiff. This has occurred.

**RESPONSE:**  The United States admits the contents of the Federal Tort Claims Act, denies

that it is liable to plaintiff in the circumstances of this case, and denies the remaining

allegations of this subparagraph.


• The Affidavit of Merit from the Doctor of Neurology is evidence that "but for" the negligence of the government (delay in care) the Plaintiff would not have suffered permanent injury and the loss of physical strength and capabilities presented in this complaint.

**RESPONSE:**  The United States denies the allegations of this subparagraph.

•      Evidence of the Government's failed responsibilities through the FBOP health service department is proven in SECTION IV. STATEMENT OF THE CLAIM - ATTACHMENT PAGES ONE THROUGH FIVE[4] respectively.

**RESPONSE:**  The United States denies it "failed responsibilities," that any of its agents

or employees acted negligently, or that it is liable to plaintiff on any basis.  The United

States denies any remaining allegations in this subparagraph, and will respond to the

allegations contained in "SECTION IV. STATEMENT OF THE CLAIM -

ATTACHMENT PAGES ONE THROUGH FIVE" below.

•      Evidence through discovery will prove that the United States of America is responsible for Plaintiff's permanent injuries.

**RESPONSE:**  The United States denies the allegations of this subparagraph.

•      Plaintiff's Affidavit of Merit will explain why.

**RESPONSE:**  The United States lacks knowledge or information sufficient to form a belief

as to the truth of the allegations of this subparagraph; accordingly, these allegations are

denied.

---

[4] Found at Doc. No. 1, pages 6 to 9.

SECTION IV. STATEMENT OF THE CLAIM - ATTACHMENT PAGES ONE THROUGH FIVE OF COMPLAINT[5]

The Plaintiff had surgery On November 30th 2017. The surgery was performed at Essentia Health, St. Mary's hospital in Duluth Minnesota by Dr. Jarod Broadway, a neurosurgeon. The operation consisted of a multi-level C5-6, C6-7 disectomy at the cervical spine with fusion and stabilization using peak and human cadaver. Two "replacement" discs were used to replace the herniated cervical spine discs. Six (6) titanium screws and a plate were installed to stabilize the new "discs".

**RESPONSE**:  The United States admits that on November 30, 2017, plaintiff underwent a C5-6/6-7 cervical discectomy and fusion performed by Dr. Steven J. Broadway at Essentia Health, St. Mary's Medical Center in Duluth, Minnesota.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

Unfortunately, due to the deliberate indifference of FBOP medical staff and Essentia Health, the time delay between injury and surgery (the responsibility of the FBOP), and the time delay between Essentia Health's knowledge of upcoming surgery, and the time delay to surgery [sic].  The entire process took far too long from beginning to end.  The Federal Bureau of Prisons and it's employees and Essentia Health and it's employees who were in charge of Plaintiff's custody and care, are responsible for what is now a verified permanent disability to the Plaintiff.

**RESPONSE**:  The United States denies the allegations of this paragraph.

Dr. Broadway's Nurse Practitioner, NP Rose at Essentia Health St. Mary's Duluth, along with the post operation neurologist' nerve conduction test results show nerve damage, atrophy, lack of response to direct stimulation by electrical current, buzzing, numbness and most importantly, pain and a strength loss at a 4/5 level at the right tricep, which will not, in the opinion of the neurologist, return.

---

[5] Incorporated by reference and found at Doc. No. 1, pages 6 to 9.  For ease of answering, the United States has broken the continuous paragraph down into sentences grouped by subject.

**RESPONSE:**  The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph; accordingly, these allegations are denied.

Plaintiff is three (3) years post operative.

**RESPONSE:**  The United States admits that on November 30, 2017, plaintiff underwent a C5-6/6-7 cervical discectomy and fusion, and more than three years have passed since that time.

The neurologist' [sic] advice warns against repetitive flexation at the right tricep.

**RESPONSE:**  The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph; accordingly, these allegations are denied.

Permanent injury has occurred due to the delay in care. [D]ocumentation will show that even after an MRI and neurosurgeon consult, the FBOP still didn't fully believe the Plaintiff was in need of surgery, or that Plaintiff was suffering in excruciating pain for five (5) month's from initial injury on through to eventual surgery.

**RESPONSE:**  The United States denies the allegations of this paragraph.

Two month's after radiologist determination of C5-6, C6-7 herniation and nerve compression, the Health Services department at FCI Sandstone sent Plaintiff to the psychology department telling Plaintiff the problem may be psychological.  That referral was after first sending Plaintiff to St. Mary's Essentia Health, Duluth for what was supposed to be surgery, however the FBOP misscheduled.  Plaintiff was then taken back to FCI Sandstone and sent to psychology, and surgery was rescheduled.  Meanwhile, Plaintiff was suffering in excruciating pain with two (2) herniated cervical discs, compressed and pinched nerves and loss of strength in right tricep that Health services were well aware of.

**RESPONSE:**  The United States admits plaintiff was referred to Psychology as part of FCI Sandstone's routine pain management protocols.  The United States further admits plaintiff was initially scheduled for surgery on October 18, 2017, and then rescheduled for

November 30, 2017. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

Plaintiff was denied pain medication and was given an antidepressant as a replacement. Plaintiff was also not given the post operation pain medication or muscle relaxers prescribed by the operating neurosurgeon.

**RESPONSE**: The United States denies the allegations of this paragraph.

Documentation at discovery will show that Plaintiff, in inter-prison communication with Health Service staff, pled over, and over again for help with pain management and constant worry and discussion about the weakness in right arm and concern for permanent damage if Plaintiff did not get into surgery immediately. Medical professionals are well aware of the importance of decompressing a compressed nerve so that permanent loss of function does not occur.

**RESPONSE**: The United States admits plaintiff communicated with Health Services staff between July 5, 2017, and his surgery on November 30, 2017. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

Physicians Assistant J. Southwick has been Plaintiff's Primary Care Provider since 2015.

**RESPONSE**: The United States admits Ms. Southwick has been one of plaintiff's medical providers since 2015, and denies any remaining allegations of this paragraph.

Evidence will show that if not for Plaintiff (sneaking around) PA Southwick, Plaintiff would not have been seen by Dr. Mayer.

**RESPONSE**: The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph; accordingly, these allegations are denied.

Once Dr. Mayer administered a strength test, he diagnosed the weak arm and was very concerned.  Dr. Mayer administered a cortison shot to the area, and later requested an urgent MRI for within two (2) weeks, (which was in itself the beginning of delay in care as to Dr. Mayer).

**RESPONSE:**  The United States denies Dr. Mayer is an employee of the United States.

No response to the allegations of this paragraph is required.

Unfortunately, 17 days passed before an MRI was completed.

**RESPONSE:**  The United States admits plaintiff had a cervical MRI on August 7, 2017,

and denies any remaining allegations of this paragraph.

PA Southwick' [sic] first attempt at patient care consisted of instructing Plaintiff to acquire a tennis ball (There are no tennis balls within the prison) and place the ball between my back and a wall and rub around to relax the back muscles.  When Plaintiff told PA Southwick that "there are no tennis balls", Southwick instructed Plaintiff to get a handball from the commissary the following week and pay for it himself.  That was the event that caused Plaintiff to initially break the chain of command and go find Dr. Mayer for himself.

**RESPONSE:**  The United States admits Ms. Southwick evaluated plaintiff on July 5, 2017,

and she provided him with stretching exercises.  The United States lacks knowledge or

information sufficient to form a belief as to the truth of the remaining allegations of this

paragraph; accordingly, those allegations are denied.

Plaintiff [h]as permanent nerve damage, strength loss, muscle atrophy, pain in shoulder, neck, tricep, forearm, hand and finger.  Numbness in right hand and finger.  Periodic muscle spasms throughout the neck, arm and hand.  The inability to hold flexation in tricep and bicep without cramping occurring.  According to the medical professionals, the Plaintiff will be disabled for the rest of his life.

**RESPONSE:**  The United States lacks knowledge or information sufficient to form a belief

as to the truth of the allegations of this paragraph; accordingly, these allegations are denied.

IV. STATEMENT OF THE CLAIM - ATTACHMENT PAGE TWO

A.    <u>Nelson - Sandstone Nurse (RN)</u>

Deliberate Indifference - Medical Malpractice - Negligence - Delay in Care.

•     July 1, 2017  7:00am Initial reporting of injury to RN Nelson - Health Services.  He stated, "Nothing can be done until Wednesday the 5th because of the holiday weekend".

**RESPONSE**:  The United States denies July 1, 2017 was the initial report of plaintiff's alleged injury.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

•     July 1, 12:00pm ordered to Health Services. <u>RN Nelson administered first strength test to my right arm</u>.

**RESPONSE**:  The United States admits plaintiff was seen by Mr. Nelson on July 1, 2017, at approximately 12:00 p.m.  The United States admits Mr. Nelson tested plaintiff's strength, but the United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

•     July 2, 2017 I went to Health Services and reported pain, numbness and strength loss in right arm.  I was told it would be three (3) days before I would be seen by my primary care provider.

**RESPONSE**:  The United States admits plaintiff spoke with Mr. Nelson on July 2, 2017, regarding "having more neurological symptoms."  The United States further admits Mr. Nelson consulted with the on-call medical provider and then indicated plaintiff could

follow-up on Wednesday (July 5, 2017).   The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

• July 4, 2017 7:00am I went to Health Services.  I asked RN Nelson for Ibuprofen. He told me to "buy ibuprofen from the prison commissary". He then relented and gave me ibuprofen on June [sic] 5, 2017.

**RESPONSE**:  The United States admits on July 1, 2017, plaintiff was prescribed 800 mg ibuprofen, three times a day for three days, as a self-administered medication. The United States further admits the medication was dispensed that day and plaintiff was advised to purchase ibuprofen from the commissary when the prescribed medication was gone. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

• August 19, 2017  7:00am   I went to Health Services in pain.  RN Nelson said that "I needed to go talk to the psychology department".  He stated, (implied) that, "maybe my issues are psychological".  This statement by RN Nelson was eight (8) days after MRI report and diagnosis of the two (2) Herniated cervical discs was reported to Health Services by the MRI Radiologist and eight (8) days after Health Services had approved an outside neurological consultation at St. Mary's Essentia Health, Duluth.

**RESPONSE**:  The United States admits that on August 19, 2017, at approximately 8:25 a.m., Mr. Nelson entered a Nursing – Triage Note that summarizes plaintiff's self-report of pain.  The United States admits that per this Triage Note, Mr. Nelson "suggested a referral to assist with [plaintiff's] frustration and he refused."  The United States admits plaintiff had had a cervical MRI on August 7, 2017, which showed (1) "C5-C6: Uncovertebral hypertrophy and disc osteophyte complex result in mild central canal

narrowing and moderate right neural foraminal narrowing"; (2) "C6-C7: Uncovertebral hypertrophy posterior disc osteophyte complex resulting in mild central canal narrowing and moderate right neural foraminal narrowing"; and (3) "Multilevel spondylotic changes with moderate right neural foraminal narrowing at C5-C6 and C6-C7. No cord compression or abnormal cord signal." The United States also admits Ms. Southwick referred plaintiff for a Neurosurgery evaluation on August 11, 2017. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

• August 19, 2017 11:30am I went to Health Services and received a shot of Toradol from RN Nelson who had to call and get permission from a doctor on call.

**RESPONSE:** The United States admits that on August 19, 2017, at approximately 10:00 a.m., Mr. Nelson received a voice order/telephone order for a 30 MG/ML intramuscular injection of Ketorolac from a BOP doctor. The United States further admits the injection was administered at approximately 12:18 p.m. that day. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

• October 19, 2017 I was ordered to the Psychology Department of a directive from Health Services Two (2) months after RN Nelson first stated that my issue may be psychological and two (2) months after my MRI results and two (2) months after my consultation with neurosurgeon at St. Mary's Essentia Health and nearly two (2) months after surgery was approved. RN Nelson's action show an Eighth amendment violation against cruel and unusual punishment.

**RESPONSE:** The United States admits plaintiff was referred to Psychology as part of FCI Sandstone's routine pain management protocols. The United States further admits plaintiff

15

was seen by a neurosurgeon on August 29, 2017. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

B.     Jenefer Southwick - Physicians Assistant

   Deliberate Indifference - Medical Malpractice - Negligence - Delay in Care.

•      July 5, 2017 7:30am Callout to Health Services. <u>PA Southwick administered the second strength test to my right arm</u>. I explained my symptoms of pain, numbness, strength loss. I was told to get a tennis ball and rub it on my back while standing against a wall and massage my muscles. There are no tennis balls in prison. I was then told to buy handballs on the commissary the next week. I was denied a trigger point injection also.

**RESPONSE:** The United States admits Ms. Southwick evaluated plaintiff on July 5, 2017, and provided him with stretching exercises. The United States denies plaintiff was denied a trigger point injection. The United States affirmatively pleads Ms. Southwick noted during her exam on July 5, 2017, that plaintiff was awaiting follow-up with a doctor. A contract doctor administered the trigger point injection the same day. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

C.     Jenefer Southwick - Physicians Assistant

   Deliberate Indifference - Medical Malpractice - Negligence Delay in Care.

•      August 7, 2017 MRI performed.

16

**RESPONSE:**  The United States admits the allegation of this paragraph – namely, that an MRI was performed on plaintiff on August 7, 2017.  The United States denies any remaining allegations of this paragraph, including information reflected in its headings.

•     August 11, 2017 Appointment with PA Southwick.  I am told that it can be three (3) to four (4) months before a consultation may happen with a neurosurgeon.  MRI results had come back and report showed herniation of CS-6, C6-7 cervical spine with cord compression.  PA Southwick treated MRI results as a non emergency.

**RESPONSE:**  The United States admits plaintiff met with Ms. Southwick on August 11, 2017, and she submitted a neurosurgery consultation request with a target schedule date of December 11, 2017, and "Routine" priority.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

•     August 22, 2017  8:30am  Appointment with PA Southwick.  Again, Plaintiff is told that there would be a consult with neurosurgeon, which we had spoke about eleven (11) days prior on August 11, 2017.

**RESPONSE:**  The United States admits plaintiff met with Ms. Southwick on August 22, 2017, and according to a Follow-up Visit Note, she and plaintiff "[r]eviewed the process and where we are with regard to scheduling" the neurosurgery consultation.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

IV. STATEMENT OF THE CLAIM - ATTACHMENT PAGE THREE
C.    August 22, 2017 Continued
    PA Southwick denied ibuprofen request, stating that Plaintiffs pain level did not warrant a prescription of ibuprofen. This is eleven (11) days after MRI results showing herniation and cord compression.

**RESPONSE:**  The United States admits plaintiff met with Ms. Southwick on August 22, 2017.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

- PA Southwick looked up my commissary spending to see if I had been purchasing ibuprofen.  I stated to PA Southwick at this time, "Do you think that I am lying about my injury?"  PA Soutwick stated, "she didn't appreciate me questioning her ability".  It was then that Southwick confined me to my housing unit.

**RESPONSE:**  The United States admits plaintiff met with Ms. Southwick on August 22, 2017, and was confined to his housing unit with follow-up in seven to ten days as he continued to report symptoms and the prior lifting restrictions had not stablished his symptoms. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

- August 31, 2017 7:30am PA Southwick mentioned Dr. Broadways report and recommendation. She asked if I wanted surgery? We had this discussion and it is now twenty (20) days since Health Services knew of MRI results and injury. I asked "why are we not making this a priority? PA Southwick stated that "I had been dealing with this for years".  I stated that "I have never dealt with weakness"[,] and "Three (3) medical professionals, you (Southwick), Dr. Mayer, and RN Nelson have administered strength tests, and we have the MRI and consultation from the neurosurgeon, why are we not making this a priority?"  PA Southwick stated that "Dr. Broadway (St. Mary's Essentia Health Neurosurgeon) report did not state an urgency".  I told PA Southwick to call Dr. Broadway because he told me that if it were up too him, Plaintiff would be in surgery the following day after consultation, but unfortunately scheduling was in the control of the FBOP.

**RESPONSE:**  The United States admits plaintiff met with Ms. Southwick on August 31, 2017, and they discussed the surgery recommendation.  The United States further admits

Ms. Southwick indicated in Follow-up Visit Note there was no time-line recommended for the surgery, plaintiff claimed the neurosurgeon told him he needed the surgery "soon", and Ms. Southwick consulted the neurosurgery group for a specific time-line.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

•       October 18, 2017 Admitted to St. Mary's Essentia Health, Duluth for neurosurgery. Sent back to prison without surgery being performed due to FBOP Sandstone Health Services not isolating Plaintiff the night before surgery so that Plaintiff would not have food in stomach for 12 hours prior to surgery, which is standard operating procedure within the FBOP.

**RESPONSE**:  The United States admits plaintiff was transported to St. Mary's Essentia Health for a scheduled surgery and returned to FCI Sandstone the same day without having surgery.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

D.      Dr. Mayer - Health Director - Sandstone Primary Care Physician

        Deliberate Indifference - Medical Malpractice - Negligence - Delay in Care.

•       July 5, 2017 2:30pm I sought out Dr. Mayer and explained my symptoms.  He took my vitals and administered a strength test.  This is the third (3rd) strength test within a span of four (4) days by three (3) different Health Care providers and this is the Primary Care Provider and Director of Health Services for FBOP Sandstone.  Dr. Mayer administered a Trigger Point injection.

**RESPONSE**:  The United States denies Dr. Mayer is an employee of the United States. No response to the allegations of this paragraph is required.

- July 6, 2017 I sought out Dr. Mayer and he told me to come see him on August 20, 2017.

**RESPONSE:**  The United States denies Dr. Mayer is an employee of the United States.

No response to the allegations of this paragraph is required.

- July 20, 2017 <u>Dr. Mayer performed the fourth (4) strength test on my right arm.</u> He then sent a request for an URGENT MRI to be done by July 31, 2017. Dr. Mayer stated that he was very concerned about Plaintiffs right arm weakness and that it could possibly be permanent.

**RESPONSE:**  The United States denies Dr. Mayer is an employee of the United States.

No response to the allegations of this paragraph is required.

- This was the last time that Plaintiff ever saw Dr. Mayer about this medical issue. The urgent MRI took 17 days to happen.

**RESPONSE:**  The United States denies Dr. Mayer is an employee of the United States.

No response to the allegations of this paragraph is required.

E.   <u>Heidi Voss - Health Service Administrator</u>

   Deliberate Indifference - Medical Malpractice - Negligence - Delay in Care.

- July 5-20, 2017 The only interaction Plaintiff ever had with Health Service Administrator H. Voss was in the waiting room at Health Services. Voss told me that "I have been dealing with my symptoms for years and that I would be fine". I told her, "Ms. Voss, my arm is dead, I can't use it, I have never had weakness in my arm before". Voss walked away from me without speaking another word.

**RESPONSE:**  The United States lacks knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph; accordingly, those allegations are denied.

20

IV. STATEMENT OF THE CLAIM - ATTACHMENT PAGE FOUR

F.      Dr. Jarod Broadway – Neurosurgeon, St. Mary's - Essentia Health, Duluth

        Deliberate Indifference - Medical Malpractice - Negligence - Delay in Care.

•       August 29, 2017 Initial consultation with Dr. Broadway at his office in Duluth, MN.

**RESPONSE:**  No response required as the allegations of this paragraph are not directed to

the United States.


•       November 30, 2017 Surgery performed for cervical spine C5-6, C6-7 herniation and
        cord compression.

**RESPONSE:**  No response required as the allegations of this paragraph are not directed to

the United States.


G.      Warden Fikes and the Federal Bureau of Prisons

        Deliberate Indifference - Medical Malpractice - Negligence - Delay in Care.

•       The Warden and the Federal Bureau of Prisons are ultimately in charge of the
        custody and care of each and every prisoner assigned to the FBOP and Sandstone
        Prison.

**RESPONSE:**  The United States denies the allegations of this paragraph.

H.      Dr. Mayer - Health Director - Sandstone Primary Care Physician
        Heidi Voss - Health Service Administrator
        Jenefer Southwick - Physicians Assistant
        Dr. Jarod Broadway – Neurosurgeon, St. Mary's – Essentia Health, Duluth
        Warden Fikes and the Federal Bureau of Prisons

        Deliberate Indifference - Medical Malpractice - Negligence - Delay in Care.

•       153 days elapsed between initial reporting of Plaintiffs injury, and final surgery.

**RESPONSE:**  The United States admits plaintiff had surgery on November 30, 2017.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

•      115 days elapsed between MRI and final surgery.

**RESPONSE:**   The United States admits plaintiff had an MRI on August 7, 2017, and surgery on November 30, 2017.   The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

•      91 days elapsed between Plaintiffs consultation with Dr. Broadway at St. Mary's Essentia Health, Duluth MN and final surgery.

**RESPONSE:**  The United States admits plaintiff had a consultation with the Neurosurgery Clinic at Essentia Health-Duluth on August 29, 2017, and surgery on November 30, 2017. The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

•      89 days elapsed between PA Southwick's pre-surgery consultation with Plaintiff and final surgery.

**RESPONSE:**  The United States admits plaintiff had preoperative evaluations on October 12, 2017, and November 22, 2017.  The United States further admits plaintiff had surgery on November 30, 2017.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

22

• 17 days elapsed between the time Dr. Mayer submitted an Urgent MRI request and the MRI.

**RESPONSE:**  The United States admits the MRI request was entered on July 21, 2017, as an "Urgent" priority, and plaintiff had an MRI on August 7, 2017.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

• 132 days elapsed between Dr. Mayer's URGENT MRI request and Plaintiffs surgery.

**RESPONSE:** The United States admits the MRI request was entered on July 21, 2017, as an "Urgent" priority, and plaintiff had surgery on November 30, 2017.  The United States lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph; accordingly, those allegations are denied.

The Plaintiff is not responsible for the delay in care that ultimately led to the permanent damage to Plaintiffs physical being.  The time delay is the reason for the permanent damage to the Plaintiff.  Health Care providers are responsible.  Health Care providers at this level knew or should have known that the time delay herniated discs and cord compression most always lead to damage that is irreversible.  Documentation will prove that the Plaintiff did everything that a prisoner can possibly do to notify those in charge of his care, that something was dangerously wrong, and that he needed there help.  Plaintiff pleaded with his providers.  The Plaintiff at first wasn't believed, he was sent to psychology, he was told to buy a ball and rub it on his back, he had to sneak around to get a visit with the Clinical Health Director.  PA Southwick was visibly upset when Plaintiff asked her if she thought that he was faking.  This was after the MRI results came back with proof of a very serious spine and neck injury.  Dr. Mayer disappeared from the scene after submitting the urgent MRI request.  Health Service Administrator H. Voss all but ignored the Plaintiff.  Was Dr. Broadway complicit?  Who's job was it, and what took so long for the Plaintiff to get surgery?  Is this standard procedure?  Plaintiff had been taken out of Sandstone for far less serious medical issues in the past.  1. 9 days after not having a bowel movement Plaintiff was taken out for an emergency enema.  2. 30 days for a tooth extraction.  3. 30 days for a cortisone shot (approximate).   Why did it take 91 days between the neurosurgery

consultation and final surgery?  The FBOP and St. Mary's Essentia Health are responsible for the damage caused to the Plaintiff.  The FBOP and St. Mary's Essentia Health' should be held responsible for the damage caused to the Plaintiff.

**RESPONSE:**  The United States denies any of its employees acted negligently in this

matter or that it is liable to plaintiff.  The United States lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations of this paragraph;

accordingly, those allegations are denied.


V.      REQUEST FOR RELIEF

Find for the Plaintiff in the amount of $750,000.00 - (FTCA Claim)
Find for the Plaintiff in the amount of $750,000.00 - (Bivens Action) - Compensatory Damages Find for the Plaintiff in the amount of $1,000,000.00 - (Bivens Action) - Punitive Damages Per Defendant.
and;
In addition to any other remedy this Honorable Court deems appropriate.

**RESPONSE:**  The United States denies plaintiff is entitled to the amount listed, or to any

relief whatsoever in this matter.

                                        Respectfully submitted,

Dated:  March 24, 2022                  CHARLES J. KOVATS, JR.
                                        Acting United States Attorney

                                        *s/ David W. Fuller*

                                        BY:  DAVID W. FULLER
                                        Assistant U.S. Attorney
                                        Attorney ID Number 390922
                                        600 United States Courthouse
                                        300 South Fourth Street
                                        Minneapolis, MN 55415
                                        Phone:  612-664-5600
                                        Email: David.Fuller@usdoj.gov

                                        Attorneys for Defendant United States

24