UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RECEIVED BY MAIL
JUN 29 2022
CLERK, U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

Mario Ferbo Mancini,
    pro se,

           Plaintiff(s),

(Enter the full name(s) of ALL plaintiff(s)
and prisoner number(s) in this action.)

vs.

The United States of America - FTCA Claim
Federal Bureau of Prisons,
Warden Fikes,
Dr. Mayer - Clinical Director,
Heidi Voss - Health Service Administrator,
Jenefer Southwick - Physicians Assistant,
Nurse Nelson RN.
Dr. Broadway
Official and Individual (Personal) Capacities
N.P. Rose,
St. Mary's Hospital, (Essentia Health)

**PERSONAL INJURY**
**SECOND AMENDED COMPLAINT.**

Case No. 20-cv-2532 (ECT/DTS)
(To be assigned by Clerk of District Court)

DEMAND FOR JURY TRIAL

YES _X_    NO ___

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS UNDER**
**42 U.S.C. § 1983 / BIVENS - 8TH AMENDMENT**
& A COMPLAINT UNDER THE FEDERAL TORT CLAIMS ACT
(28 U.S.C. SECTIONS 1346 AND 2671 et seq.)., STATE COMMON LAW.

I. PREVIOUS LAWSUITS

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved



SCANNED
JUN 29 2022
U.S. DISTRICT COURT MPLS

in this action or otherwise relating to your imprisonment in the last three years?
- ☐ Yes
- ☒ No

B. If you answer to (a) is "yes", describe each lawsuit in the space below.

    1. Parties to the previous lawsuit:

        Plaintiffs:

        Defendants:

    2. Court (If federal court, name the district. If state court, name the state and county.):

    3. Case Number:

    4. Name of judge assigned to the case:

    5. Cause of action (Cite the statute under which you filed and write a brief statement of the case):

    6. Disposition or final determination of the case (for example, dismissed or appealed).

    7. Approximate date of filing the lawsuit:

    8. Approximate date of disposition or final determination of the lawsuit:

***Attach a copy of the disposition or final determination of the lawsuit if it was filed in a court other than the U.S. District Court for the District of Minnesota.***

If there was more than one lawsuit, describe the additional lawsuits on a separate sheet of paper answering the same questions in the same order as above in Question 1(b). Label this information as Question 1(b).
Check here if additional sheets of paper are attached. ☐

## II. PRESENT PLACE OF CONFINEMENT

A. Is there a prisoner grievance procedure in the institution?

    ☒ Yes

    ☐ No

B. Did you present the facts relating to your complaint in the prisoner grievance procedure?

    ☒ Yes    (FTCA Claim)

    ☒ No    PLRA - Bivens

C. If you answered "yes" to question II.B.:
1. What steps did you take:

    Federal Tort Claim

2. What was the result?

    Denied

***Attach a copy of the decision or disposition received from the prisoner grievance procedure.****

D. If you answered "no" to question II.B., explain why you did not present the facts relating to your complaint in a prisoner grievance procedure.

    Unavailable and/or Futile

## III. PARTIES

List your name, prisoner number, address and telephone number. Do the same for any additional plaintiffs. Attach an additional sheet of paper, if necessary.

A.    Name of Plaintiff:  Mario Ferbo Mancini

    Prisoner Number  11007-041

    Address    PO Box 1000
                  Sandstone MN 55072

5

Additional Plaintiffs:

Provide each defendant's full name, official position, and place of employment. Attach additional sheets of paper, if necessary.

B.  Name:                The United States of America

    Official Position:   Government of the United States

    Employer's Address:  PO Box 999
                         Sandstone MN  55072

Additional Defendants: Federal Bureau of Prisons, Warden Fikes, Dr. Mayer,
N.P. Rose;             PA Jenefer Southwick, HSA Heidi Voss, RN Nelson
St. Mary's Hospital    PO Box 999, Sandstone MN  55072
(Essentia Health)      and
                       Dr. Jarod Broadway - Essentia Health, St. Mary's Hospital
                       Duluth MN.

**NOTE: IF THERE ARE ADDITIONAL PLAINTIFFS OR DEFENDANTS, PLEASE PROVIDE THEIR NAMES AND ADDRESSES ON A SEPARATE SHEET OF PAPER.**
Check here if additional sheets of paper are attached: ☐
Please label the attached sheets of paper as II.A. for Plaintiffs and II.B. for Defendants.

IV. STATEMENT OF THE CLAIM

Describe in the space provided below the basic facts of your claim. Describe how each individual defendant is personally involved, including dates, places and specific wrongful acts or omissions by each defendant. Each factual allegation should be provided in separately lettered paragraphs, beginning with letter A. Do not make any legal arguments or cite any cases or statutes.

A.

6

IV. STATEMENT OF THE CLAIM — ATTACHMENT PAGE ONE

DEC 1 4 2020
U.S. DISTRICT COURT
DISTRICT COURT
MINNEAPOLIS, MINNESOTA

The Plaintiff had surgery On November 30th 2017. The surgery was performed at Essentia Health, St. Mary's hospital in Duluth Minnesota by Dr. Jarod Broadway, a neurosurgeon. The operation consisted of a multi-level C5-6, C6-7 disectomy at the cervical spine with fusion and stabilization using peak and human cadaver. Two "replacement" discs were used to replace the herniated cervical spine discs. Six (6) titanium screws and a plate were installed to stabilize the new "discs". Unfortunately, due to the deliberate indifference of FBOP medical staff and Essentia Health, the time delay between injury and surgery (the responsibility of the FBOP), and the time delay between Essentia Health's knowledge of upcoming surgery, and the time delay to surgery. The entire process took far too long from beginning to end. The Federal Bureau of Prisons and it's employees and Essentia Health and it's employees who were in charge of Plaintiff's custody and care, are responsible for what is now a verified permanent disability to the Plaintiff. Dr. Broadway's Nurse Practitioner, NP Rose at Essestia Health St. Mary's Duluth, along with the post operation neurologist' nerve conduction test results show nerve damage, atrophy, lack of response to direct stimulation by electrical current, buzzing, numbness and most importantly, pain and a strength loss at a 4/5 level at the right tricep, which will not, in the opinion of the neurologist, return. Plaintiff is three (3) years post operative. The neurologist' advice warns against repetitive flexation at the right tricep. Permanent injury has occurred due to the delay in care. documentation will show that even after an MRI and neurosurgeon consult, the FBOP still didn't fully believe the Plaintiff was in need of surgery, or that Plaintiff was suffering in excruciating pain for five (5) month's from initial injury on through to eventual surgery. Two month's after radiologist determination of C5-6, C6-7 herniation and nerve compression, the Health Services department at FCI Sandstone sent Plaintiff to the psychology department telling Plaintiff the problem may be psychological. That referral was after first sending Plaintiff to St. Mary's Essentia Health, Duluth for what was supposed to be surgery, however the FBOP misscheduled. Plaintiff was then taken back to FCI Sandstone and sent to psychology, and surgery was rescheduled. Meanwhile, Plaintiff was suffering in excruciating pain with two (2) herniated cervical discs, compressed and pinched nerves and loss of strength in right tricep that Health services were well aware of. Plaintiff was denied pain medication and was given an antidepressant as a replacement. Plaintiff was also not given the post operation pain medication or muscle relaxers prescribed by the operating neurosurgeon. Documentation at discovery will show that Plaintiff, in inter-prison communication with Health Service staff, pled over, and over again for help with pain management and constant worry and discussion about the weakness in right arm and concern for permanent damage if Plaintiff did not get into surgery immediately. Medical professionals are well aware of the importance of decompressing a compressed nerve so that permanent loss of function does not occur. Physicians Assistant J. Southwick has been Plaintiff's Primary Care Provider since 2015. Evidence will show that if not for Plaintiff (sneaking around) PA Southwick, Plaintiff would not have been seen by Dr. Mayer. Once Dr. Mayer administered a strength test, he diagnosed the weak arm and was very concerned. Dr. Mayer administered a cortisone shot to the area, and later requested an urgent MRI for within two (2) weeks, (which was in itself the beginning of delay in care as to Dr. Mayer). Unfortunately, 17 days passed before an MRI was completed. PA Southwick' first attempt at patient care consisted of instructing Plaintiff to acquire a tennis ball (There are no tennis balls within the prison) and place the ball between my back and a wall and rub around to relax the back muscles. When Plaintiff told PA Southwick that "there are no tennis balls", Southwick instructed Plaintiff to get a handball from the commissary the following week and pay for it himself. That was the event that caused Plaintiff to initially break the chain of command and go find Dr. Mayer for himself. Plaintiff Has permanent nerve damage, strength loss, muscle atrophy, pain in shoulder, neck, tricep, forearm, hand and finger. Numbness in right hand and finger. Periodic muscle spasms throughout the neck, arm and hand. The inability to hold flexation in tricep and bicep without cramping occurring. According to the medical professionals, the Plaintiff will be disabled for the rest of his life.

12-10-20  Mario Marcine

IV. STATEMENT OF THE CLAIM — ATTACHMENT PAGE TWO

A. <u>Nelson - Sandstone Nurse (RN)</u>

Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.

- July 1, 2017  7:00am  Initial reporting of injury to RN Nelson - Health Services. He stated, "Nothing can be done until Wednesday the 5th because of the holiday weekend".
- July 1, 12:00pm  ordered to Health Services. <u>RN Nelson administered first strength test to my right arm.</u>
- July 2, 2017  I went to Health Services and reported pain, numbness and strength loss in right arm. I was told it would be three (3) days before I would be seen by my primary care provider.
- July 4, 2017 7:00am  I went to Health Services. I asked RN Nelson for Ibuprofen. He told me to "buy ibuprofen from the prison commissary". He then relented and gave me ibuprofen on June 5, 2017.
- August 19, 2017  7:00am  I went to Health Services in pain. RN Nelson said that "I needed to go talk to the psychology department". He stated, (implied) that, "maybe my issues are psychological".
This statement by RN Nelson was eight (8) days after MRI report and diagnosis of the two (2) Herniated cervical discs was reported to Health Services by the MRI Radiologist and eight (8) days after Health Services had approved an outside neurological consultation at St. Mary's Essentia Health, Duluth.
- August 19, 2017 11:30am  I went to Health Services and received a shot of Toradol from RN Nelson who had to call and get permission from a doctor on call.
- October 19, 2017 I was ordered to the Psychology Department of a directive from Health Services  Two (2) months after RN Nelson first stated that my issue may be psychological and two (2) months after my MRI results and two (2) months after my consultation with neurosurgeon at St. Mary's Essentia Health and nearly two (2) months after surgery was approved.
RN Nelson's action show an Eight amendment violation against cruel and unusual punishment.

B. <u>Jenefer Southwick - Physicians Assistant</u>

Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.

- July 5, 2017 7:30am  Callout to Health Services. <u>PA Southwick administered the second strength test to my right arm.</u> I explained my symptoms of pain, numbness, strength loss. I was told to get a tennis ball and rub it on my back while standing against a wall and massage my muscles. There are no tennis balls in prison. I was then told to buy handballs on the commissary the next week. I was denied a trigger point injection also.

C. <u>Jenefer Southwick - Physicians Assistant</u>

Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.

August 7, 2017  MRI performed.
- August 11, 2017  Appointment with PA Southwick. I am told that it can be three (3) to four (4) months before a consultation may happen with a neurosurgeon. MRI results had come back and report showed herniation of C5-6, C6-7 cervical spine with cord compression. PA Southwick treated MRI results as a non emergency.
- August 22, 2017  8:30am  Appointment with PA Southwick. Again, Plaintiff is told that there would be a consult with neurosurgeon, which we had spoke about eleven (11) days prior on August 11, 2017.

12-10-20  Maino Mancini

C. August 22, 2017 Continued

   PA Southwick denied ibuprofen request, stating that Plaintiffs pain level did not warrant a prescription of ibuprofen. This is eleven (11) days after MRI results showing herniation and cord compression. PA Soutwick looked up my commissary spending to see if I had been purchasing ibuprofen. I stated to PA Southwick at this time, "Do you think that I am lying about my injury?" PA Soutwick stated, "she didn't appreciate me questioning her ability". It was then that Southwick confined me to my housing unit.

- August 31, 2017 7:30am PA Southwick mentioned Dr. Broadways report and recommendation. She asked if I wanted surgery? We had this discussion and it is now twenty (20) days since Health Services knew of MRI results and injury. I asked "why are we not making this a priority? PA Southwick stated that "I had been dealing with this for years". I stated that "I have never dealt with weakness". and "Three (3) medical professionals, you (Southwick), Dr. Mayer, and RN Nelson have administered strength tests, and we have the MRI and consultation from the neurosurgeon, why are we not making this a priority?" PA Southwick stated that "Dr. Broadway (St. Mary's Essentia Health Neurosurgeon) report didnot state an urgency". I told PA Southwick to call Dr. Broadway because he told me that if it were up too him, Plaintiff would be in surgery the following day after consultation, but unfortunately scheduling was in the control of the FBOP.

- October 18, 2017 Admitted to St. Mary's Essentia Health, Duluth for neurosurgery. Sent back to prison without surgery being performed due to FBOP Sandstone Health Services not isolating Plaintiff the night before surgery so that Plaintiff would not have food in stomach for 12 hours prior to surgery, which is standard operating procedure within the FBOP.

D.  Dr. Mayer - Health Director - Sandstone Primary Care Physician

   Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.

- July 5, 2017 2:30pm I sought out Dr. Mayer and explained my symptoms. He took my vitals and administered a strength test. <u>This is the third (3rd) strength test within a span of four (4) days by three (3) different Health Care providers</u> and this is the Primary Care Provider and Director of Health Services for FBOP Sandstone. Dr. Mayer administered a Trigger Point injection.
- July 6, 2017 I sought out Dr. Mayer and he told me to come see him on August 20, 2017.
- July 20, 2017 <u>Dr. Mayer performed the fourth (4) strength test on my right arm.</u> He then sent a request for an URGENT MRI to be done by July 31, 2017. Dr. Mayer stated that he was very concerned about Plaintiffs right arm weakness and that it could possibly be permanent.
This was the last time that Plaintiff ever saw Dr. Mayer about this medical issue. The urgent MRI took 17 days to happen.

E.  Heidi Voss - Health Service Administrator

   Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.

- July 5-20, 2017 The only interaction Plaintiff ever had with Health Service Administrator H. Voss was in the waiting room at Health Services. Voss told me that "I have been dealing with my symptoms for years and that I would be fine". I told her, "Ms. Voss, my arm is dead, I can't use it, I have never had weakness in my arm before". Voss walked away from me without speaking another word.

12-10-20  Mario Marine

IV. STATEMENT OF THE CLAIM — ATTACHMENT PAGE FOUR

F. <u>Dr. Jarod Broadway - Neurosurgeon, St. Mary's - Essentia Health, Duluth</u>

Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.
- August 29, 2017  Initial consultation with Dr. Broadway at his office in Duluth, MN.
- November 30, 2017  Surgery performed for cervical spine C5-6, C6-7 herniation and cord compression.

G. <u>Warden Fikes and the Federal Bureau of Prisons</u>

Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.
- The Warden and the Federal Bureau of Prisons are ultimately in charge of the custody and care of each and every prisoner assigned to the FBOP and Sandstone Prison.

H. <u>Dr. Mayer - Health Director - Sandstone Primary Care Physician</u>
<u>Heidi Voss - Health Service Administrator</u>
<u>Jenefer Southwick - Physicians Assistant</u>
<u>Dr. Jarod Broadway - Neurosurgeon, St. Mary's - Essentia Health, Duluth</u>
<u>Warden Fikes and the Federal Bureau of Prisons</u>

Deliberate Indifference — Medical Malpractice — Negligence — Delay in Care.

- 153 days elapsed between initial reporting of Plaintiffs injury, and final surgery.
- 115 days elapsed between MRI and final surgery.
- 91 days elapsed between Plaintiffs consultation with Dr. Broadway at St. Mary's Essentia Health, Duluth MN and final surgery.
- 89 days elapsed between PA Southwick's pre-surgery consultation with Plaintiff and final surgery.
- 17 days elapsed between the time Dr. Mayer submitted an Urgent MRI request and the MRI.
- 132 days elapsed between Dr. Mayer's URGENT MRI request and Plaintiffs surgery.

The Plaintiff is not responsible for the delay in care that ultimetely led to the permanent damage to Plaintiffs physical being. The time delay is the reason for the permanent damage to the Plaintiff. Health Care providers are responsible. Health Care providers at this level knew or should have known that the time delay herniated discs and cord comression most always lead to damage that is irreversible. Documentation will prove that the Plaintiff did everything that a prisoner can possibly do to notify those in charge of his care, that something was dangerously wrong, and that he needed there help. Plaintiff pleaded with his providers. The Plaintiff at first wasn't believed, he was sent to phychology, he was told to buy a ball and rub it on his back, he had to sneak around to get a visit with the Clinical Health Director. PA Southwick was visibly upset when Plaintiff asked her if she thought that he was faking. This was after the MRI results came back with proof of a very serious spine and neck injury. Dr. Mayer disappeared from the scene after submitting the urgent MRI request. Health Service Administrator H. Voss all but ignored the Plaintiff. Was Dr. Broadway complicit? Who's job was it, and what took so long for the Plaintiff to get surgery? Is this standard procedure? Plaintiff had been taken out of Sandstone for far less serious medical issues in the past. 1. <u>9 days</u> after not having a bowel movement Plaintiff was taken out for an emergeny enegma. 2. <u>30 days</u> for a tooth extraction. 3. <u>30 days</u> for a cortisone shot (approximate). Why did it take 91 days between the neurosurgery consultation and final surgery? The FBOP and St. Mary's Essentia Health are responsible for the damage caused to the Plaintiff. The FBOP and St. Mary's Essentia Health should be held responsible for the damage caused to the Plaintiff.

12-10-20 *[signature]*

IV. STATEMENT OF THE CLAIM - ATTACHMENT PAGE FIVE

I.   <u>The United States of America</u> - <u>Negligence</u>

   The United States of America and her agencies were negligent in respect to the delay in care the Plaintiff suffered through for his neck injury/delay in surgery which caused permanent injury/disability, partial loss of use of right arm, pain and suffering, numbness in hand and arm, shooting pain throughout arm, the inability to "flex" right arm ever again, and most importantly, strength loss that is irreversible, per medical experts.

- The Government of the United States of America, being the supreme agency in control of occurrences and dictates as to The Federal Tort Claims Act (28 U.S.C. Sections 1346 and 2671 et seq.). is the authority and agency in which Tort claims are to be presented.

- The negligence on behalf of the agency in charge of health care as to federal prisoners is handed down to the Federal Bureau of Prisons. This claim and the evidence presented in it shows that to due negligence/delay in care, the Plaintiff suffered loss to person that is irreversible.

- The loss can only be rectified in this paragraph with money damages.

- The FTCA calls for money damages to the Plaintiff if the United States is negligent as to negligency in health care provided to the Plaintiff. This has occurred.

- The Affidavit of Merit from the Doctor of Neurology is evidence that "but for" the negligence of the government (delay in care) the Plaintiff would not have suffered permanent injury and the loss of physical strength and capabilities presented in this complaint.

- Evidence of the Government's failed responsibilities through the FBOP health service department is proven in SECTION IV. STATEMENT OF THE CLAIM - ATTACHMENT PAGES ONE THROUGH FIVE respectively.

- Evidence through discovery will prove that the United States of America is responsible for Plaintiff's permanent injuries.

- Plaintiff's Affidavit of Merit will explain why.


1-26-2021       *[signature]*

### DEFENDANTS ATTACHMENT PAGE SEVEN
### AMENDED, ADDED – COMMON LAW CLAIMS

1. Defendant Thomas Mayer, M.D. was employed by an unknown Contractor Doctor Mayer was the FCI Sandstone Clinical Director and primary care Physician at the time of Plaintiffs injury throughout treatment through eventual surgery.

2. Defendant Jarod Broadway, M.D., employed by and at St. Mary's Hospital, Essentia Health, Duluth Minnesota. Doctor Broadway is the Neurosurgeon who treated and performed the Plaintiffs surgery. Doctor Broadway's Office schedules patient oppointment and surgeries.

3. Defendant St. Mary's Hospital, Essentia Health, Duluth Minnesota. Either a corporation or non profit doing business in Minnesota. FCI Sandstone Contracts with St. Mary's to provide inmate patient care.

4. Defendant Unknown Contractor, either a corporation or non-profit doing business in Minnesota. Thomas Mayer, M.D. is an employee of and Contracted through an Unknown Contractor. Unknown Contractor has a Contract with FCI Sandstone to provide a Physician to FCI Sandstone for inmate patient care. Dr. Mayer was the Clinical Director and Primary Care Physician at FCI Sandstone.

5. Defendant N.P. Rose. Nurse Practitioner Rose, employed by St. Mary's Hospital. N.P. Rose is Doctor Broadway's assistant and Primary Nurse Practitioner.

6. Defendants numbered 1-5 above are being sued in their Personal Capacities respectively.

**CAUSE OF ACTION INCLUDES COMMON LAW NEGLIGENCE AND MALPRACTICE**
ATTACHMENT PAGE EIGHT

V. STATEMENT OF THE CLAIM

To be added to and including attachment page one and attachment page three Paragraph D., and attachment page four Paragraph H.

7. Defendant Thomas Mayer, M.D., was employed by the Unknown Contractor at all times relevant to this lawsuit. Dr. Mayer was the Clinical Director and Primary Care Physician at FCI Sandstone.

8. On July Fifth, 2017, Plaintiff engaged Dr. Mayer in his office. Dr. Mayer took Plaintiffs vitals and administered a strength test to Plaintiffs right arm. Loss of strength is a serious and key symptom of a ruptured cervical disc compressing a nerve, causing pain, numbness, and loss of strength which can be permanent if not treated properly and urgently. Dr. Mayer administered a trigger point injection of Cortizone and Lidocane. A trigger point injection can alleviate pain temporarily.

9. July sixth, 2017 Plaintiff engaged Dr. Mayer and had an unscheduled visit. Plaintiff told Dr. Mayer that the pain had diminished with the trigger point injection, however, the Plaintiff's right arm was still extremely weak. Plaintiff was instructed to return for an unscheduled visit on July twelfth, 2017.

10. July 12, 2017, no visits or records are found for this day.

11. July 20, 2017, Doctor Mayer performed a strength test on Plaintiffs right arm. He then sent a request for an urgent MRI to the North Regional Office of the Bureau of Prisons. The MRI was to be performed by July 31, 2017. Doctor Mayer stated that he was very concerned about the right arm weakness and the chance for permanent damage and loss of strength in Plaintiffs right arm.

12. Plaintiff was never seen by FCI Sandstone Clinical Director - Primary Care Physician after July 20, 2017.

13. Doctor Mayers urgent request for an MRI did not occur until August 7, 2017.

ATTACHMENT PAGE NINE

V. STATEMENT OF CLAIM, (Cont.)

14.  MRI results concluded that Plaintiff had a multi-level Cervical Disc Herniation at C5-6 and C6-7 of the Cervical spine. Consultation with St. Mary's Hospitals Neurosurgeon did not occur until August 29, 2017.

15.  Surgery was performed on November 30, 2017. Ninety-one (91), days after Consultation.

16.  Defendant Mayer appeared concerned enough to request an urgent MRI, but did not follow up with Plaintiff concerning the MRI results or to consult with Plaintiff concerning possible surgery. Defendant Mayer was negligent in his care for and scheduling of Plaintiffs care. The delay ultimately caused Plaintiff permanent right arm damage.

17. Defendant Mayer is being sued for Negligence and Malpractice.

VI. STATEMENT OF THE CLAIM

18.  Defendant Unknown BOP Contractor, employed Thomas Mayer, M.D. Contractor provides Physician staff to FCI Sandstone. Defendant Contractor is responsible for patient care and addressing the needs of Plaintiff. Contractor is also responsible for their employees actions, professional conduct, and patient care as it pertains to decision making.

19.  Defendant Unknown Bureau of Prisons Contractor, is being sued for Negligence and Malpractice.

VII. STATEMENT OF THE CLAIM

To be added to and including attachment page one and attachment page four
Paragraphs F and H.

20.  Defendant Jarod Broadway, M.D., St. Mary's Hospital Neurosurgeon. Plaintiff's initial pre-surgery consultation occurred with Dr. Broadway, a Neurosurgeon employed at and by St. Mary's Hospital along with Nurse Practitioner Rose employed at and by St. Mary's Hospital. Initial consultation was on August 29, 2017.

ATTACHMENT PAGE TEN

21.  Plaintiffs vitals were taken, a right arm strength test was performed, and the MRI was reviewed. All Parties agreed that a Cervical Disectomy with Fusion and Stabilization was warranted. Plaintiff accepted the offer for surgery.

22.  Defendant Broadway stated that surgery should happen "in a day or two", but that "scheduling was up to the Bureau of Prisons".

23.  Defendant Broadway also stated that, "complete recovery was 50/50", due to the length of time up to this point.

24.  Plaintiff, at some point within a week after consultation wrote Dr. Broadway a letter stating Plaintiff's concerns about possible permanent right arm damage and loss of strength due to the extended amount of time prior to surgery. Dr. Broadway did not reply directly to the Plaintiff's letter, however he sent the letter back to FCI Sandstone medical staff, who told Plaintiff that if he had questions concerning his medical care, Plaintiff should bring them to FCI Sandstone medical staff.

25.  Defendant Broadway was Negligent in his care and scheduling, knowing of the urgency which was needed in order for there to be no permanent damage to Plaintiff.

26.  Defendant Jarod Broadway, M.D. is being sued for Negligence and Malpractice.

## VIII. STATEMENT OF THE CLAIM
To be added to and including attachment page one

27.  Defendant Nurse Practitioner Rose was employed by and at St. Mary's Hospital on August 29, 2017. Plaintiff was seen by N.P. Rose and Dr. Broadway for a Pre-Surgery Consultation. N.P. Rose administered vitals and examined Plaintiff for loss of arm strength which is a symptom and sign of a Compressed "Pinched Nerve". N.P. Rose and Dr. Broadway went over Plaintiff's MRI results and offered Plaintiff surgery, which was accepted.

ATTACHMENT PAGE ELEVEN

VIII. STATEMENT OF CLAIM, (Cont.)

28.     Nurse Practitioner Rose is the author of an official Bureau of Prisons inter-office document between FCI Sandstone and St. Mary's Hospital. This document states a surgery date of sixty (60) days out from the day of Plaintiff's Consultation at St. Mary's Hospital. This document contradicts what was explained to Plaintiff on August 29, 2017, that it was imperative that surgery be performed in a timely manner for hopes of a full recovery so that permanent damage would not occur.

29.     Plaintiff's only post-surgery follow up at St. Mary's Hospital was with N.P. Rose. Defendant N.P. Rose stated in her report for that day, that permanent damage and strength loss in right arm is likely permanent. Plaintiff and Defendant N.P. Rose spoke about the length of time from injury to surgery and the effect that time most likely had on the outcome.

30.     Defendant N.P. Rose knowing the dangers of prolonged Nerve Compression at the Cervical spine should have scheduled surgery within a week of Consultation.

31.     Defendant N.P. Rose is being sued for Negligence and Malpractice.

IX. STATEMENT OF THE CLAIM

32.     Defendant St. Mary's Hospital, Essentia Health, Duluth Minnesota.

33.     Defendant St. Mary's Hospital employed both Jarod Broadway, M.D. and Nurse Practitioner Rose. Defendant St. Mary's Hospital has a duty to protect and care for its patients.

34.     Defendant St. Mary's Hospital, Essentia Health is being sued for Negligence and Malpractice.

35.     As a result of the actions of Defendants Thomas Mayer, M.D.; Unknown Bureau of Prisons Contractor; Jarod Broadway, M.D.; N.P. Rose; and St. Mary's Hospital. The Plaintiff has suffered severe pain, disability, disfigurement, mental and emotional distress, loss of right arm strength which is permanent, and other damages.

ATTACHMENT PAGE TWELVE

36.     **COUNT 1 - NEGLIGENCE.**  All Defendants, individually or through their agents, by their above described actions breached their duty to exercise a reasonable standard of care in dealing with the Plaintiff. Defendants failed and breached the reasonable standard of care by their delay in care, by delay in surgery, by ignoring Plaintiff's documented pleas for care and for failure to offer timely and adaquate medical treatment and surgery.

37.     **COUNT 2 - MEDICAL MALPRACTICE.**  Defendants, Unknown Bureau of Prisons Contractor and St. Mary's Hospita, Essentia Health, Duluth Minnesota, through their individually named Defendant employee's and other employee's, breached their duties to exercise an appropriate standard of professional care with respect to their treatment of Plaintiff Mario Ferbo Mancini by their delay in care, by going against medically known standards, time frames, and procedures.

38.     As a result of the above - described illegal and/or wrongful conduct, and because the above mentioned medical professionals knew or should have known that herniations of the Cervical Spine, that compress the nerves, incorporated with the symptom of rapid and complete loss of arm strength, is an emergency. Thus, the urgent MRI. This along with the Plaintiff's repeated and documented pleas for medical assistance show that the Plaintiff has suffered the damages described above.

ATTACHMENT PAGE THIRTEEN

X. RELIEF REQUESTED

Wherefore, Plaintiff prays for Judgement awarded in his favor as follows:

1. The United States of America for Seven Hundred and Fifty Thousand and NO/100 dollars. ($750,000.00)

2. Find for the Plaintiff against Thomas Mayer, M.D. and award in excess of Fifty Thousand and NO/100 dollars. ($50,000.00)

3. Find for the Plaintiff against Jarod Broadway, M.D. and award in excess of Fifty Thousand and NO/100 dollars. ($50,000.00)

4. Find for the Plaintiff against St. Mary's Hospital, Essentia Health and award in excess of Fifty Thousand and NO/100 dollars. ($50,000.00)

5. Find for the Plaintiff against Unknown Bureau of Prisons Contractor and award in excess of Fifty Thousand and NO/100 dollars. ($50,000.00)

6. Find for the Plaintiff against N.P. Rose, and award in excess of Fifty Thousand and NO/100 dollars. ($50,000.00)

7. The awards for Paragraphs 2, 3, 4, 5, and 6 as and for compensatory damages.

8. Punitive damages and further relief for Paragraphs 2, 3, 4, 5, and 6 as the Court deems just and equitable.

**I hereby certify under penalty of Perjury that the above Complaint is true to the best of my information, knowledge, and belief.**

Signed this Twenty-Seventh day of June, 2022

Signature of Plaintiff: _____

Federal Correctional institution
Mario Ferbo Mancini, #11007-041 K-1
P.O. Box 1000
Sandstone, MN. 55072