UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 20-CV-02532-ECT-DTS

| | |
|---|---|
| MARIO FERBO MANCINI,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>        Defendants. | **MEMORANDUM IN SUPPORT OF THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

The Court should grant summary judgment and dismiss this medical malpractice claim for failing to comply with the expert-disclosure requirements of Minnesota Statutes section 145.682. That statute is intended to weed out frivolous malpractice claims by requiring a detailed expert-disclosure affidavit: (1) stating the standard of care, (2) identifying how the defendant departed from that standard of care, and (3) outlining how that departure caused the plaintiff's damages. Plaintiff's expert-disclosure affidavit fails all three of these requirements, and if he fails to cure the issues raised in this motion before the hearing, the Court should dismiss this case with prejudice.

## BACKGROUND

Plaintiff Mario Ferbo Mancini is an inmate at the Federal Correctional Institution in Sandstone, Minnesota ("FCI Sandstone"). Compl., ECF No. 1 at 3.[1] He alleges that he was

---

[1] Plaintiff's amended complaint, ECF No. 7, references and supplements his original pleading, ECF No. 1. The Court has previously decided to treat the two pleadings "together as the operative Amended Complaint." R. & R., ECF No. 66 at 8. The United States

1

permanently disabled because medical staff at FCI Sandstone delayed providing him necessary surgery after a neck injury. *Id.* at 6.

Plaintiff alleges that he first reported a neck injury to a nurse at FCI Standstone's health services unit on July 1, 2017. *Id.* at 7. He claims that he later reported to Jenefer Southwick, PA, a few days later, complaining of "pain, numbness, [and] strength loss" in his right arm. *Id.* Dr. Thomas Mayer ordered an MRI on July 20, 2017, *id.* at 8, and Plaintiff reviewed the MRI results about three weeks later with PA Southwick, who ordered a neurosurgery consult, *id.* at 7. Plaintiff then consulted with Dr. Broadway, a neurosurgeon, who ultimately performed Plaintiff's anterior cervical discectomy and fusion ("ACDF") procedure on November 30, 2017. *Id.* at 9.

Plaintiff sued the United States and several other defendants in December 2020, alleging a state-law medical-malpractice claim under the Federal Tort Claims Act and federal constitutional violations under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). *See* ECF No. 1 at 6. The Court dismissed all of Plaintiff's claims except his FTCA claim against the United States, alleging that the United States is liable for causing an excessive delay between his alleged injury and his surgery. R. & R., ECF No. 66; Order Accepting R. & R., ECF No. 68.

The parties commenced discovery on March 28, 2022 after the Court issued its first Pretrial Scheduling Order. ECF No. 74. Plaintiff then served a one-page expert-disclosure affidavit of Dr. Tanzid Shams, M.D., on July 20, 2022. Declaration of Lucas B. Draisey

---

borrows the background facts from Plaintiff's complaint but does not admit the truth of those facts.

("Draisey Decl."), ¶ 2. *See* Minn. Stat. § 145.682, subds. 2(2), 4 (requiring medical malpractice plaintiff to serve affidavit of expert disclosure within 180 after commencing discovery). The substance of Dr. Shams' opinions is limited to three paragraphs:

> 6. It is my opinion that since the Plaintiff was discovered to have cervical spinal cord impingement, accompanied by loss of right arm strength, the cervical discectomy procedure should have been conducted within a week. The main reason for this is that if cervical bones cause further impingement on the nerves, it can cause severe, irreversible damages, including long-term loss of arm and hand function, as well as loss of sensation of the arm and hand, which appears to have occurred according to the records.
>
> 7. It is my opinion that the Defendants named in the Complaint, including the Bureau of Prisons . . . , breached the standard of care by failing to provide proper medical treatment to the Plaintiff relative to the allegations contained in the Complaint.
>
> 8. The aforementioned breach of the standard of care caused severe nerve injury to the Plaintiff.

Draisey Decl., Ex. A.

More than 180 days have passed since the parties commenced discovery, but as of the date of filing this memorandum, Plaintiff has not supplemented his expert-disclosure affidavit to show that his medical-malpractice claim is meritorious as required by Minnesota law.

## ARGUMENT

The Court should grant summary judgment and dismiss Plaintiff's claim for failing to comply with the substantive expert requirements in Minnesota Statutes section 145.682. Minnesota law imposes a high standard on plaintiffs alleging malpractice against health care providers. Minn. Stat. § 145.682. A plaintiff must serve an affidavit of expert review

3

along with his complaint, showing that an expert reviewed the facts of his case and found them meritorious. *Id.*, subds. 2(1), 3. He must also serve a second affidavit within 180 days after commencing discovery, identifying the experts he intends to call at trial and detailing the experts' opinions and the facts those experts rely on. *Id.*, subds. 2(2), 4. The expert-disclosure affidavit must "state . . . the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion." *Id.*, subd. 4(a). If a plaintiff fails to comply with this statute and does not later cure any deficiencies, the Court must dismiss the case with prejudice. *Id.*, subd. 6(c).[2]

Summary judgment is appropriate when a plaintiff fails to comply with section 145.682. *E.g.*, *Stowell v. Huddleston*, 643 F.3d 631, 639 (8th Cir. 2011) (affirming summary judgment against plaintiff for failing to comply with section 145.682). The Court must grant summary judgment if, after granting all reasonable inferences in favor of the nonmoving party, there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby,*

---

[2] The statute and its mandatory-dismissal remedy amount to substantive law and are applicable in this Court under the Federal Tort Claims Act. *Oslund v. United States,* 701 F.Supp. 710, 713–14 (D. Minn. 1988) (Murphy, J.). *See also Ellingson v. Walgreen Co.*, 78 F.Supp.2d 965, 968–69 (D. Minn. 1999) (Rosenbaum, J.); *Lombardo v. Seydow-Weber*, 529 N.W.2d 702, 705 (Minn. Ct. App. 1995) ("[T]he language requiring mandatory dismissal of malpractice claims regulates substantive rights, has a jurisdictional component, and can be outcome determinative."). The Eighth Circuit Court of Appeals recently affirmed a district court's decision that Iowa's similar certificate-of-merit statute was substantive and applied in an FTCA action against the United States. *Morrow v. United States*, 47 F.4th 700, 704 (8th Cir. 2022). *See also Mathison v. United States*, 44 Fed.Appx. 27, 28 (8th Cir. 2002) (unpublished) (applying section 145.682 in FTCA case and cited favorably by the district court in *Morrow*, No. 21-cv-1003, 2021 WL 4347682, at *4 (N.D. Iowa July 28, 2021)).

*Inc.*, 477 U.S. 242, 250 (1986). If the moving party shows the absence of genuine issues of material fact for trial, the nonmoving party must point to specific, admissible facts showing that there are disputed issues for trial. Fed. R. Civ. P. 56(c)(1)(B); *Anderson*, 477 U.S. at 256. For the reasons discussed in this memorandum, Plaintiff has failed to comply with section 145.682, and the Court should grant summary judgment for Defendant.

I.   **Expert testimony is necessary to Plaintiff's claim, and section 145.862 applies to this case.**

Section 145.682 requires plaintiffs to file an expert-disclosure affidavit in every case "against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case." Minn. Stat. § 145.682, subd. 2. "[E]xpert testimony is necessary in all but the most obvious medical malpractice cases." *Haile v. Sutherland*, 598 N.W.2d 424, 428 (Minn. Ct. App. 1999). This includes testimony on each of three essential elements: "(1) the standard of care recognized by the medical community as applicable to the particular defendant's conduct, (2) that the defendant in fact departed from that standard, and (3) that the defendant's departure from the standard was a direct cause of [the patient's] injuries." *Plutshack v. Univ. of Minn. Hosps.*, 316 N.W.2d 1, 5 (Minn. 1982).

This is not one of those rare cases where expert testimony is unnecessary. Plaintiff's claim would require the factfinder to determine when and how various health care professionals were responsible for diagnosing his cervical spine injuries, whether surgery was necessary, and on what timeline. These are not the types of obvious questions that a

lay person can answer without the help of expert testimony. Section 145.682 therefore applies in this case.

## II.     Plaintiff failed to meet the substantive requirements of section 145.682.

The Minnesota legislature designed section 145.682 "to encourage parties to bring motions to dismiss early in the proceedings in order either to eliminate frivolous lawsuits or to give the plaintiff an opportunity to cure any defects prior to trial." *Maudsley v. Pederson*, 676 N.W.2d 8, 12 (Minn. Ct. App. 2004). To that end, the statute requires plaintiffs to serve an expert-disclosure affidavit that describes "the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion." Minn. Stat. § 145.682, subd. 4(a). Minnesota's courts require the affidavit to state more than "empty conclusions which . . . can mask a frivolous claim." *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 193 (Minn. 1990). Instead, the affidavit must:

> (1) disclose specific details concerning the expert's expected testimony, including the applicable standard of care, (2) identify the acts or omissions that the plaintiff alleges violated the standard of care, and (3) include an outline of the chain of causation between the violation of the standard of care and the plaintiff's damages.

*Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 428 (Minn. 2002). Minnesota's courts have "stressed that plaintiffs must adhere to strict compliance with the requirements of Minn. Stat. § 145.682." *Broehm v. Mayo Clinic Rochester*, 690 N.W.2d. 721, 726 (Minn. 2005).

For the reasons discussed in this memorandum, Dr. Shams' expert-disclosure affidavit fails to meet any of these requirements. Plaintiff has therefore failed to show that his claim is meritorious, and the Court should dismiss his claim with prejudice.

### A. The expert-disclosure affidavit fails to disclose Dr. Shams' detailed opinion on the applicable standard of care.

Dr. Shams' statement of the standard of care fails to satisfy section 145.682's requirements. To succeed in a medical malpractice case, Plaintiff must introduce expert testimony explaining "the standard of care recognized by the medical community as applicable to the particular defendant's conduct." *Plutshack*, 316 N.W.2d at 5. A health care provider is not liable for medical malpractice for an "honest error in judgment." *Ouellette by Ouellette v. Subak*, 391 N.W.2d 810, 814 (Minn. 1986). Expert testimony is necessary to distinguish "between an error in judgment and negligence" in medical malpractice cases. *Todd v. Eitel Hosp.*, 237 N.W.2d 357, 362 (Minn. 1975). Dr. Shams' affidavit fails to do that.

Dr. Shams' post hoc judgment does not identify any standard of care, let alone any "specific details concerning . . . the applicable standard of care." *Teffeteller*, 645 N.W.2d at 428. In his affidavit, Dr. Shams states that he is "familiar with the applicable standard of care relative to the allegations in the complaint." Draisey Decl., Ex A, ¶ 5. But he does not identify that standard of care other than to say that Plaintiff's ACDF "procedure should have been conducted within a week" of discovering cervical spinal cord impingement accompanied by weakness in his right arm. *Id.*, ¶ 6. A standard of care identifies what a reasonably skilled and knowledgeable health care professional would do or not do to diagnose the need for the surgery and to ensure that it is conducted in a timely manner. *Medina v. EMSA Correctional Care, Inc.*, No. Civ.01-838 (RHK/AJB), 2002 WL 1488773, at *3 (D. Minn. July 10, 2002) ("[T]he affidavit must specifically describe the affirmative

7

actions a healthcare provider should take."). Dr. Shams' affidavit merely points out that a particular surgery should have happened within a week. This might reflect Dr. Shams' professional disagreement with the timing of Plaintiff's surgery, but it does not identify what reasonably skilled and knowledgeable medical professionals in the community would do to ensure that Plaintiff's condition was timely and properly diagnosed and treated. It therefore fails to distinguish a non-actionable error of judgment from malpractice.

Minnesota's courts have dismissed medical malpractice cases for failing to disclose sufficiently detailed standard-of-care opinions. *Anderson v. Rengachary,* 608 N.W.2d 843, 845 (Minn. 2000) (expert-disclosure affidavit stating "trauma to the vagus nerve should not occur, either during [surgery] or in aftercare" does not satisfy section 145.682's requirements); *Lindberg v. Health Partners, Inc.*, 599 N.W.2d 572, 574–75, 578 (Minn. 1999) (affidavit is insufficient when expert states only that he is "familiar with the applicable standard of care but fails to state what it was or how the appellants departed from it"); *Medina*, 2002 WL 1488773, at *3 (stating "that the standard of care required that proper ambulatory aids be ordered but that Medina was not provided with any crutches or braces" does not satisfy section 145.682's standard-of-care requirement). Dr. Shams' statement of the standard of care is like those in *Anderson*, *Lindberg*, and *Medina*, and the Court should find that it fails to meet the requirements of section 145.682.

    **B.**    **Dr. Shams' affidavit does not identify who violated the standard of care or how.**

Not only does Dr. Shams' affidavit fail to identify the standard of care, but it also fails to explain who departed from it and how. The expert-disclosure affidavit must

8

"identify the acts or omissions that the plaintiff alleges violated the standard of care." *Teffeteller*, 645 N.W.2d at 428. But Dr. Shams' affidavit states only that Plaintiff's ACDF "procedure should have been conducted within a week" of discovering cervical spinal cord impingement accompanied by weakness in his right arm. Draisey Decl., Ex A, ¶ 6. By using the passive voice, Dr. Shams omits the identity of any person whose conduct fell below the alleged standard of care—even though Plaintiff's complaint alleges the involvement of several different health care professionals, including a nurse, a physician assistant, a health service administrator, a primary-care physician, and a neurosurgeon. Compl., ECF No. 1 at 7–9.

The affidavit does not identify any specific conduct that any of these individuals engaged in, let alone explain how that conduct fell below the standard of care applicable to that person's particular profession. Instead, Dr. Shams simply attributes the alleged breach to "the Defendants named in the Complaint, including the Bureau of Prisons, Thomas Mayer, M.D., and Jared Broadway, M.D." Draisey Decl., Ex. A, ¶ 7. This broad gesture to all named defendants does not pass muster under section 145.682. *See Plutshack*, 316 N.W.2d at 5 (requiring evidence of the standard of care "as applicable to the particular defendant's conduct"). The Court should conclude that Dr. Shams' affidavit fails to adequately identify the conduct that departed from the standard of care as required by section 145.682.

### C.   The affidavit does not outline the chain of causation.

Finally, and perhaps most glaringly, the expert-disclosure affidavit fails to outline the chain of causation between the alleged violation of the standard of care and Plaintiff's

9

damages. To make out a prima facie case of medical malpractice, a plaintiff must show "that it is more probable than not that his or her injury was a result of the defendant health care provider's negligence." *Leubner v. Sterner*, 493 N.W.2d 119, 121 (Minn. 1992). "A mere possibility of causation is not enough to sustain a plaintiff's burden of proof." *McDonough v. Allina Health Sys.*, 685 N.W.2d 688, 697 (Minn. Ct. App. 2004). But a mere possibility is all that Dr. Shams has identified.

An expert-disclosure affidavit must contain more than conclusory allegations of medical causation. It must provide "*specific details* concerning the experts' expected testimony, including . . . an outline of the chain of causation between the violation of the standard of care and the plaintiff's damages." *Stroud v. Hennepin County Med. Ctr.*, 556 N.W.2d 552, 555–56 (Minn. 1998) (emphasis added). The case law is replete with Minnesota cases dismissing medical malpractice claims for failing to outline the chain of causation. The Minnesota Court of Appeals summarized just a few of them:

> Relevant cases have concluded that statements such as the following will not meet the statute's requirements by themselves:
>
> (1) "the departure from the standard of care was a direct cause of [plaintiff's] second degree burns," *Mercer v. Andersen*, 715 N.W.2d 114, 123 (Minn. App. 2006);
>
> (2) "there was a failure to diagnose and treat a subarachnoid hemorrhage which ultimately resulted in a complicated hospital course and death," *Stroud*, 556 N.W.2d at 554;
>
> (3) "[T]he departures from accepted levels of care, as above identified, were a direct cause of [plaintiff's] death," *Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 429 (Minn. 2002).

*Hawkins v. Fontaine*, No. A07-1460, 2008 WL 4006749, at *4 (Minn. Ct. App. Sept. 2, 2008).

Merely alleging a delay in care does not satisfy the statute's requirements. In *Maudsley*, 676 N.W.2d at 10, the plaintiff alleged that her ophthalmic surgeon delayed diagnosing a post-surgical infection, causing her to lose vision in her right eye. The plaintiff's expert-disclosure affidavit stated:

> It is more likely than not that if treatment had been initiated on June 27, rather than June 28, Leslie Maudsley would not have lost the vision in her right eye. . . . When infections are present it is generally the rule that better outcomes are the result of earlier treatment; in fact every hour counts. It is more likely than not that if treatment had been initiated on June 27, 1999 that Leslie Maudsley would have recovered from the infection and had the vision she had at the time surgery was performed on June 17, 1999.

*Id.* at 13–14. The Minnesota Court of Appeals held that this statement failed to satisfy the strict requirements of section 145.682. *Id.* at 14. Attributing the plaintiff's injuries to "a delay in diagnosis is not enough; if it were, expert testimony on causation would not be necessary." *Id.* Instead, the expert must "illustrate 'how' and 'why' the alleged malpractice caused the injury." *Id.*

The expert-disclosure affidavit in this case likewise fails to comply with the requirements of section 145.682, subdivision 4. In his affidavit, Dr. Shams states that "*if* cervical bones cause further impingement on the nerves, it *can* cause severe, irreversible damages, including long-term loss of arm and hand function, as well as loss of sensation of the arm and hand, which appears to have occurred according to the records." Draisey Decl., Ex. A, ¶ 6 (emphasis added). Then, only after charging all the named defendants generally with breaching some undisclosed standard of care, he concludes, "The

11

aforementioned breach of the standard of care caused severe injury to the Plaintiff." *Id.*, ¶ 8. This conclusory statement fails the specificity requirements of section 145.682.

Dr. Shams' statement that "[t]he aforementioned breach of the standard of care caused severe injury to the Plaintiff" resembles the broad and conclusory statements that Minnesota courts have found insufficient in *Mercer*, *Stroud*, and *Teffteller*. Beyond those fourteen words, Dr. Shams merely states that "if" Plaintiff's cervical bones caused further impingement on his nerves, it "can" cause damage. But "if" and "can" aren't good enough to establish medical causation. *McDonough*, 685 N.W.2d at 697 ("A mere possibility of causation is not enough to sustain a plaintiff's burden of proof.").

Absent from Dr. Shams' affidavit is any evidence, or even a suggestion, that these conditions occurred—he does not say that Plaintiff's cervical bones did in fact further impinge his nerves, and he does not say that impingement occurred during the time Plaintiff was awaiting surgery. Without that evidence, Dr. Shams' causation opinion is no more insightful than those that Minnesota's courts have rejected, like "earlier treatment results in better outcomes" and that a delay "invariably results in a more serious prognosis." *Maudsley*, 676 N.W.2d at 14 (quoting *Leubner*, 493 N.W.2d at 122). The Court should therefore find that Plaintiff's expert-disclosure affidavit fails to sufficiently outline the chain of causation.

### III. Unless Plaintiff supplements his expert-disclosure affidavit, the Court must dismiss his claim with prejudice.

Plaintiff's failure to comply with the expert-disclosure requirements results in mandatory dismissal with prejudice. Minn. Stat. § 145.682, subd. 6(c). But in 2002, the

12

Minnesota legislature added a safe-harbor provision to the statute. The law now allows Plaintiff to cure his failure to comply with section 145.682, subdivision 4 by serving a compliant expert-disclosure affidavit before the hearing on the motion.

If Plaintiff cures the deficiencies in the expert-disclosure affidavit as allowed in subdivision 6(c), the government will withdraw its motion. But if he fails to cure all the deficiencies identified in this motion, the Court must dismiss his malpractice claim. *Id.* ("Failure to comply with subdivision 4 [the expert-disclosure provision] . . . results, upon motion, in mandatory dismissal with prejudice.").

## CONCLUSION

Because Plaintiff has not served an expert-disclosure affidavit that complies with Minnesota Statutes section 145.682, subdivision 4, the Court must grant the United States' motion for summary judgment and dismiss Plaintiff's cause of action against the United States with prejudice.

Dated: January 13, 2023

ANDREW M. LUGER
United States Attorney

*/s/ Lucas B. Draisey*

BY:  LUCAS B. DRAISEY
Assistant United States Attorney
Attorney ID Number 0401625
600 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN  55415
(612) 664-5600
lucas.draisey@usdoj.gov

Attorneys for Defendant