**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Mario Ferbo Mancini,                                    Case No. 20-cv-2532 (ECT/DTS)

      Plaintiff,

v.                                                                      **REPORT AND RECOMMENDATION**

United States of America,
et al.,

      Defendants.

Plaintiff Mario Mancini sued the United States, the Federal Bureau of Prisons, and several individuals, alleging state law medical malpractice under the Federal Tort Claims Act (FTCA) and constitutional violations under *Bivens*.[1] This Court's February 2022 Order dismissed all claims and defendants other than the FTCA claim against the United States (Defendant). *Mancini v. Fed. Bureau of Prisons*, No. 20-cv-2532, 2022 WL 542450 (D. Minn. Feb. 23, 2022). Mancini alleges that Defendant caused him permanent injury by negligently delaying necessary medical care. Compl., Dkt. No. 7 at 6. Both parties submitted expert reports. Wyard Aff., Dkt. No. 177-4; Trobiani Decl., Dkt. No. 179-1. Defendant moves for summary judgment and to exclude Plaintiff's proposed expert testimony. Dkt. No. 175. For the reasons discussed below, the Court recommends that Defendant's motion be granted.

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

**FINDINGS OF FACT**

Plaintiff Mario Mancini has been incarcerated since 2002 and has been held at the Federal Correctional Institution at Sandstone, Minnesota (FCI Sandstone) since 2014. Mancini Dep., Dkt. No. 177-5 at 22:2-23:6. Mancini has had a history of neck and back pain following a workplace injury in the 1990s. *Id.* at 14:2-14. A 2010 CT scan showed mild to moderate cervical spondylosis with multilevel disc degeneration and suspected osteophyte disc complexes. Dkt. No. 178-25. In 2014, Mancini reported a twinge in his neck causing pain and numbness in his right arm and fingers. Dkt. No. 178-1. On June 30, 2017, Mancini reported that he had reaggravated the neck injury while lifting a box. Dkt. No. 178-3. The nurse observed that Mancini was experiencing the same symptoms he had in the past, including numbness, tingling, and pain radiating from the neck into the arm and fingers. *Id.* She noted no loss of function or strength. *Id.* Staff administered Toradol for the pain. Dkt. No. 178-2 at 74.

Mancini returned the next day complaining of continued pain. *Id.* at 69. He was given enough Ibuprofen to get through the holiday weekend. *Id.* at 70. On July 2, Mancini noted increasing pain and numbness in his hand. *Id.* at 67. A follow-up appointment was scheduled for the morning of July 5. Dkt. No. 185-1 at 6. Dr. Thomas Mayer and physician's assistant (PA) Jenefer Southwick each examined Mancini on July 5 and separately noted pain and numbness, but no weakness. Dkt. No. 178-2 at 60-63. Dr. Mayer examined Mancini again on July 20 and recorded for the first time that he was experiencing weakness in the right arm; in that day's notes, however, Dr. Mayer mentions that tricep weakness was "first noted 2-3 weeks ago at onset of current episode." *Id.* at 55. He ordered an urgent MRI with a target date of July 31, 2017. Dkt. No. 185-1 at 11.

The MRI was performed on August 7, showed little change from the 2010 CT scan, and noted "[n]o cord compression or abnormal cord signal." Dkt. No. 178-9. Dr. Paul Harvey, FCI Sandstone's Acting Clinical Director, recommended that Mancini consult with a neurosurgeon within 30 to 60 days. Dkt. No. 185-1 at 14, 20. On August 29, Mancini consulted with neurosurgeon Dr. Steven Broadway, who offered to perform an anterior cervical discectomy and fusion (ACDF) and informed him of the risks, which included damage to the nerves and spinal cord. Dkt. No. 178-7 at 3. Mancini accepted the surgery. *Id.* Because "no timeline was recommended" in the initial consult report, PA Southwick called Dr. Broadway's office, which amended the consultation report with the recommendation that surgery be performed within 60 days—by October 30, 2017. *Id.*; Dkt. No. 178-19. Dr. Harvey approved the surgery to be performed within 90 days or on the first available date. Dkt. No. 178-18.

Mancini's surgery was scheduled for October 18, 2017. *Id.* Per Health Services' standard procedure, Mancini was to be placed in the Special Housing Unit (SHU) to ensure he did not eat for twelve hours prior to surgery. Dkt. No. 177-1 at 2. However, a Health Services Assistant sent an email containing the wrong date to the staff members responsible for placing inmates in the SHU, and Mancini was allowed to eat before the surgery. *Id.* at 13. The surgery was rescheduled and performed on November 27, 2017. Dkt. No. 178-5 at 2. On December 13, 2017, Dr. Mayer noted weakness and atrophy in Mancini's right triceps. Dkt. No. 178-17. Mancini experienced a loss of strength and continued pain and numbness following the surgery. Mancini Dep. at 44:24-46:4.

On December 14, 2020, Mancini sued the United States and several other entities and individuals, alleging state law medical malpractice under the FTCA and constitutional

violations under *Bivens*, 403 U.S. 388. Dkt. No. 1. Following this Court's February 2022 Order, only the FTCA claim against the United States remains. Pursuant to Minn. Stat. § 145.682 and in support of his medical malpractice claim, Mancini submitted an initial expert-disclosure affidavit by Dr. Tanzid Shams. Dkt. No. 98. Defendant moved for summary judgment on the basis that Dr. Shams' affidavit failed to meet the standards required under Minnesota law governing medical malpractice claims. Dkt. No. 155. Mancini obtained a new expert affidavit from Dr. Gary Wyard and Defendant withdrew its motion.

Dr. Wyard, a board-certified orthopedic surgeon, based the opinions in his affidavit on Mancini's medical records, as well as on his "education, training, professional experience, and knowledge of the applicable standard of care." Wyard Aff. ¶ 4. In Dr. Wyard's opinion, "Defendant deviated from the applicable standard of care while treating Plaintiff" by, "on multiple occasions, failing to treat [him] in the appropriate amount of time." *Id.* ¶ 5. He gives two specific examples of such delays: when Mancini received his urgent MRI seven days later than the target date, and when his surgery was delayed by over a month after staff failed to place him in the SHU. *Id.* ¶¶ 7, 11-12. Dr. Wyard references two additional instances that may constitute delayed treatment, but he does not specify whether they were deviations from the standard of care: when Mancini "return[ed] to Health Services with increasingly worsened symptoms a number of time[s]" before Dr. Mayer performed a strength test and scheduled an MRI, and when Dr. Broadway concluded on August 29, 2017, that Mancini "needed an [ACDF] surgical procedure as soon as possible to avoid permanent damage to his arm and hand," but that surgery "was not scheduled until October 18, 2017." *Id.* ¶¶ 7, 10. Wyard concludes with

the opinion that, "[a]s a result of Defendant's deviations from the standard of care for an ACDF, Plaintiff has suffered permanent nerve damage, loss of strength, muscle atrophy, numbness, and pain in his anterior shoulder, tricep, hand, and fingers." *Id.* ¶ 15.

The affidavit contains several factual assertions that are inconsistent with Mancini's medical records. For example, Dr. Wyard cites Dr. Broadway as concluding that Mancini needed surgery "as soon as possible to avoid permanent damage to his arm and hand." *Id.* ¶ 10. Mancini's medical records, however, show that Dr. Broadway initially gave no timeline for the surgery; when later asked for one, he recommended that surgery proceed within 60 days. Dkt. Nos. 178-7 at 3, 178-19. Dr. Wyard also incorrectly states that Mancini's MRI showed spinal cord compression, when in fact it showed the opposite. *See* Dkt. No. 178-9 (MRI results showing "[n]o cord compression or abnormal cord signal"). Similarly, Dr. Wyard misstates the year of the surgery and confuses the surgery date with the date of discharge. *Compare* Wyard Aff. ¶ 13 ("Plaintiff ultimately received his ACDF on November 30, 2018"), *with* Dkt. No. 178-5 (postoperative report noting date of surgery as November 27, 2017).

Defendant moves for summary judgment and to exclude expert testimony [Dkt. No. 175], arguing that the affidavit is inadmissible under Rule 702 and insufficient under the expert-affidavit requirements of Minnesota Statute § 145.682.

## CONCLUSIONS OF LAW

Defendant argues that the opinions in Dr. Wyard's expert affidavit should be excluded under Rule 702 and *Daubert*[2] because they are not based on sufficient facts or data and are not the product of reliable principles and methods. Because Plaintiff could

---

[2] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

not prove his medical malpractice claim without expert testimony, and because the affidavit also fails to meet the requirements of Minn. Stat. § 145.682, Defendant moves for summary judgment.

## I.      Admissibility of Expert Affidavit

Under Federal Rule of Evidence 702, the proponent of expert testimony must show by a preponderance of the evidence that:

> (a)      the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)      the testimony is based on sufficient facts or data;
>
> (c)      the testimony is the product of reliable principles and methods; and
>
> (d)      the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702; *see Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n.10). The trial court acts as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. Courts employ a three-part test to determine the admissibility of expert testimony: (1) the testimony must be useful to the finder of fact, "meaning it must be relevant"; (2) the expert must be qualified to assist the finder of fact; and (3) the testimony "must be reliable or trustworthy in an evidentiary sense." *In re Bair Hugger Forced Air Warming Devices Prod. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021). In short, an expert must be qualified, and their testimony must be relevant and reliable. *See id.*

Rule 702 favors admissibility if expert testimony will assist the trier of fact, even when there is some doubt regarding the usefulness of that testimony. *Clark By & Through Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998). Thus, testimony is relevant if it

"advances the trier of fact's understanding to any degree." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (quotations and citation omitted). However, "[e]xpert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006). Though courts are "admonished not to weigh or assess the correctness of competing expert opinions," *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014), expert evidence may be excluded if "there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id.*

Defendant moves to exclude the Wyard affidavit, arguing it is inadmissible under Rule 702 and *Daubert* because it is not based on sufficient facts; Dr. Wyard is not qualified to speak on the standard of care applicable to nurses; and his opinion is too conclusory to reliably explain causation. Plaintiff counters that any weaknesses in Dr. Wyard's affidavit go to the weight of the evidence, not its admissibility. After reviewing the opinions in the affidavit and the medical records on which they were based, the Court finds that Dr. Wyard's affidavit contains such factual deficiencies and conclusory speculation as to be properly excluded under Rule 702 and *Daubert*.

A.    **Factual Deficiencies**

Defendant points to four alleged errors in Dr. Wyard's affidavit: (1) it misstates the date Plaintiff first presented with weakness; (2) it says the MRI showed "cord compression" when in fact it showed "no cord compression"; (3) it incorrectly asserts that

7

Dr. Broadway concluded Plaintiff needed surgery "as soon as possible to avoid permanent damage to his arm and hand"; and (4) it misstates the date of the surgery. Plaintiff argues that any errors in the affidavit raise factual issues for the jury and go to the credibility of the testimony rather than its admissibility.

Plaintiff is correct that, as a general matter, "deficiencies in an expert's factual basis go to weight and not admissibility." *Bair Hugger*, 9 F.4th at 786. And, because experts often make inferences based on the totality of the facts, individual factual deficiencies may not warrant exclusion. *See id.* at 781 ("[A]n inference of causation based on the totality of the evidence may be reliable even if no one line of evidence support[s] a reliable inference of causation by itself.") (quotations and citation omitted). However, when an expert's opinion relies on a faulty foundation, the resulting conclusions are mere speculation. *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000). An expert opinion is inadmissible when it "is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable." *Id.* (quoting *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,* 509 U.S. 209, 242 (1993)).

Some of the facts in Dr. Wyard's affidavit are contradicted by or absent from the record. For instance, Dr. Wyard incorrectly states that Mancini's MRI showed spinal cord compression, when it actually showed "[n]o cord compression or abnormal cord signal." Dkt. No. 178-9. He misstates the year of the surgery and seems to confuse the surgery date with the date of discharge. And Dr. Broadway did not conclude that Mancini needed surgery "as soon as possible to avoid permanent damage to his arm and hand." Wyard Aff. ¶ 10. To the contrary, Mancini's medical records show that Dr. Broadway initially gave

8

no timeline for the surgery, and when asked for one, recommended it proceed within 60 days. Nowhere did any healthcare providers report that immediate surgery was needed to avoid permanent damage. Mancini asserts that Dr. Broadway told him at the consultation: "if it was up to me [the surgery] would be in a day or two but scheduling is up to the BOP." Mancini Dep. at 79:23-80:1. But any statements to this effect are absent from Mancini's medical records, which Dr. Wyard reviewed to form the basis of his opinions. *See* Wyard Aff. ¶ 4.

It is not clear what impact, if any, the factual errors in Dr. Wyard's affidavit had on his conclusions. Thus, the Court does not find that the factual errors alone constitute a faulty foundation such that exclusion is appropriate. But these errors are part of a larger problem. As is discussed in detail below, Dr. Wyard's affidavit fails to indicate the methodology he used to reach his conclusions and leaves wholly unanswered the question of *how* Defendant's actions caused Plaintiff's injuries. Without some indication which facts were important and why, the expert opinion is too speculative and unsupported to be admissible under Rule 702 and *Daubert*.

## B.    Failure to Explain Conclusions

Courts must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). When testimony's "factual basis, data, principles, methods, or their application are called sufficiently into question," the court "must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Id.* at 149 (quoting *Daubert*, 509 U.S. at 592). An

expert must provide some insight into their analysis which would "allow[] a factfinder to independently verify the accuracy of the expert's results. Absent such reliable verification, the expert's opinion is not admissible." *Kemp v. Tyson Seafood Grp., Inc.*, No. CIV.5-96-173, 2000 WL 1062105, at *7 (D. Minn. July 19, 2000). For example, "a medical opinion about causation, based upon a proper differential diagnosis, is sufficiently reliable to satisfy *Daubert.*" *Turner v. Iowa Fire Equip. Co.*, 229 F.3d 1202, 1208 (8th Cir. 2000).

Dr. Wyard's affidavit fails to provide any reasoning for his conclusions as to causation. The affidavit concludes that, "[a]s a result of Defendant's deviations from the standard of care for an ACDF, Plaintiff has suffered permanent nerve damage, loss of strength, muscle atrophy, numbness, and pain." Wyard Aff. ¶ 15. But Dr. Wyard does not describe the standard of care, explain how Defendant deviated from that standard of care, or identify why that deviation led to Mancini's injury. Even when an expert relies upon experience as the basis for his opinion, he must still "be able to point to [the] methods that he applied in reaching that opinion." *Kemp*, 2000 WL 1062105, at *4 (quotations and citation omitted). Dr. Wyard fails to do so. This is compounded by the factual errors in his affidavit, because without some methodology linking the facts with his conclusions, "there is simply too great an analytical gap between the data and the opinion proffered." *Joiner*, 522 U.S. at 146. Thus, the affidavit does not meet *Daubert*'s reliability requirement. In conjunction with its factual deficiencies, Dr. Wyard's affidavit is inadmissible as expert testimony because it is "speculative, unsupported by sufficient facts, [and] contrary to the facts of the case." *Marmo*, 457 F.3d at 757. The Court recommends that the expert opinions in Dr. Wyard's affidavit be excluded.

## II.      Motion for Summary Judgment

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is "material" only if it might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* In assessing whether a genuine dispute exists, the Court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in their favor. *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1115 (8th Cir. 2018). Summary judgment is proper when "the nonmoving party has failed to make a sufficient showing on an essential element" of his case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### A.      Failure to Comply with Minnesota Statute § 145.682

A plaintiff alleging medical negligence must comply with the expert-affidavit requirements of Minnesota Statute § 145.682. Under that statute, a plaintiff is required to submit an expert affidavit which must "(1) disclose specific details concerning the expert's expected testimony, including the applicable standard of care, (2) identify the acts or omissions that the plaintiff alleges violated the standard of care, and (3) include an outline of the chain of causation between the violation of the standard of care and the plaintiff's damages." *Teffeteller v. Univ. of Minnesota*, 645 N.W.2d 420, 428 (Minn. 2002). The Minnesota Supreme Court has long held that an expert affidavit must connect the defendant's alleged violation of the standard of care with the plaintiff's injuries. *See id.*; *Stroud v. Hennepin Cnty. Med. Ctr.*, 556 N.W.2d 552 (Minn. 1996); *Lindberg v. Health*

11

*Partners, Inc.,* 599 N.W.2d 572 (Minn. 1999); *Anderson v. Rengachary,* 608 N.W.2d 843 (Minn. 2000). "The primary purpose of an expert affidavit is to illustrate 'how' and 'why' the alleged malpractice caused the injury." *Maudsley v. Pederson*, 676 N.W.2d 8, 14 (Minn. Ct. App. 2004). "Expert affidavits that only contain broad, generalized statements regarding the standard of care are insufficient." *Robinson v. Minnesota*, No. 17-cv-437, 2020 WL 6729384, at *6 (D. Minn. July 22, 2020), *adopted by* 2020 WL 6712216 (D. Minn. Nov. 16, 2020). Experts must explain "what steps physicians should take to provide the standard of care," or provide "specific information about how [the physician's] acts or omissions violated the standard of care and caused [the plaintiff's] injury." *Id.*

Dr. Wyard's affidavit does not satisfy the requirements of Minn. Stat. § 145.682. Specifically, the affidavit does not include any details regarding the applicable standard of care and fails to outline a chain of causation between Defendant's actions and Mancini's injury. Dr. Wyard notes that delays in receiving an MRI and surgery constituted "deviations from the standard of care," but he does not say what actions would have satisfied that standard of care. He says that the delays "resulted in Plaintiff's symptoms worsening significantly" before his surgery, but he does not connect those worsened symptoms with a poor post-surgical outcome. In short, Dr. Wyard does not identify the standard of care, explain how Defendant deviated from that standard of care, or address why that deviation led to Mancini's injury. The affidavit contains only "broad, generalized statements regarding the standard of care" and fails to illustrate how and why Defendant's alleged malpractice caused the injury. *Robinson*, 2020 WL 6729384, at *6. Dr. Wyard's affidavit therefore fails to meet the requirements of section 145.682.

"Dismissal is mandated under Minn. Stat. § 145.682, subd. 6 when the disclosure requirements are not met." *Lindberg,* 599 N.W.2d at 578; *see Chizmadia v. Smiley's Point Clinic*, 873 F.2d 1163, 1164 (8th Cir. 1989) ("Failure to comply with section 145.682 results in mandatory dismissal with prejudice."); *Stowell v. Huddleston*, 643 F.3d 631, 639 (8th Cir. 2011) (affirming order granting summary judgment based on failure to comply with section 145.682). Because the Court recommends that Dr. Wyard's affidavit be excluded under Rule 702 and *Daubert*, and an expert affidavit is an essential element of a medical malpractice case in Minnesota, Defendant's motion for summary judgment should be granted. In the event that the recommendation to exclude expert testimony is not adopted, Mancini's failure to comply with the expert-affidavit requirements of Minn. Stat. § 145.682 still necessitates dismissal.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT Defendant's Motion for Summary Judgment and to Exclude Expert Testimony [Dkt. No. 175] be GRANTED and this action be DISMISSED WITH PREJUDICE.

Dated: November 17, 2023                    __s/David T. Schultz_____
                                            DAVID T. SCHULTZ
                                            U.S. Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

14

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.   A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).