UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mario Ferbo Mancini,                                    File No. 20-cv-2532 (ECT/DTS)

            Plaintiff,

v.                                                      **OPINION AND ORDER**

United States of America,

            Defendant.

Frances Ivy Mahoney-Mosedale and Daniel E. Gustafson, Gustafson Gluek PLLC, Minneapolis, MN, for Plaintiff Mario Ferbo Mancini.

Lucas B. Draisey and David W. Fuller, United States Attorney's Office, Minneapolis, MN, for Defendant United States.

Plaintiff Mario Ferbo Mancini commenced this action *pro se* by filing a complaint against the United States, the Federal Bureau of Prisons, and several individuals, alleging state law medical malpractice under the Federal Tort Claims Act ("FTCA") and constitutional violations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).[1]  Compl. [ECF No. 1].  All claims and defendants other than the FTCA claim against the United States were dismissed in an Order dated February

---

[1]     Following a referral to the FBA *Pro Se* Project, ECF No. 94, Frances Ivy Mahoney-Mosedale and Daniel E. Gustafson of Gustafson Gluek PLLC appeared on Mr. Mancini's behalf.  *See* ECF Nos. 148, 149.  Ms. Mahoney-Mosedale and Mr. Gustafson's representation of Mr. Mancini and service through the *Pro Se* Project merits acknowledgment and is greatly appreciated.

23, 2022.  ECF Nos. 66, 68.  After discovery, Defendant moved for summary judgment and to exclude Mr. Mancini's proposed expert testimony.  ECF No. 175.

Magistrate Judge David T. Schultz issued a Report and Recommendation, ECF No. 189, which recommends granting Defendant's motion.  Mr. Mancini objects to the Report and Recommendation on four grounds.  ECF No. 191.  The Court is required to review the Report and Recommendation de novo pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b)(3).  Because Mr. Mancini's proffered expert affidavit fails to meet Minnesota statutory requirements, his objections will be overruled, and Defendant's motion will be granted.

I

This Order presumes familiarity with the facts described in the Report and Recommendation.  Still, an overview of the timeline of events is helpful.  Mr. Mancini has been incarcerated since 2002 and is serving his prison term at FCI Sandstone in Minnesota. Mancini Dep. [ECF No. 177-5] 22:2–4; 23:1–4.  Record evidence shows Mr. Mancini has experienced pain in his neck, back, right arm, and shoulder since the mid-1990s.  ECF No. 178-10 (stating pain began in 1995); Mancini Dep. 15:1–14 (stating Mr. Mancini injured his neck and shoulders in 1996 or 1997).  In late June 2017, Mr. Mancini reported pain in his neck and arm to prison medical staff.  ECF No. 178-10.  He was given pain medication.  ECF No. 185-1 at Ex. A (noting Mr. Mancini returned to FCI Sandstone nurses to report the Toradol he was given was ineffective, and he was offered Motrin).  Mr. Mancini's pain continued, and he continued to seek treatment in prison.  *See, e.g.*, *id.* at Ex. B.  On July 20, Dr. Thomas Mayer ordered an "urgent," but "non-emergent," MRI with

2

a target date of July 31, 2017.  ECF No. 177-3 at Ex. 5; ECF No. 185-1 at Ex. C.  The MRI was performed on August 7.  ECF No. 178-9.  Following the MRI, anterior cervical discectomy and fusion ("ACDF") surgery was recommended and scheduled for October 18, 2017.  ECF No. 177-8 at Ex. 10; Answer [ECF No. 73] at 10.  Due to an administrative error, Mr. Mancini was not placed into special housing where he would be prohibited from eating before surgery.  *See* ECF No. 177-1 at 13.  The parties agree that, as a result of the administrative error, Mr. Mancini was allowed to eat before the scheduled surgery, and the surgery had to be rescheduled.  Def.'s Mem. in Supp. [ECF No. 176] at 11; Pl.'s Mem. in Opp'n [ECF No. 184] at 3–4.  The surgery was completed on November 27, 2017, at Saint Mary's Medical Center in Duluth, Minnesota, ECF No. 178-5, and Mr. Mancini was discharged three days later, ECF No. 178-4.  Mr. Mancini alleges he suffers "permanent nerve damage, strength loss, muscle atrophy, pain," "[n]umbness," and "[p]eriodic muscle spasms."  Compl. at 6.

In December 2020, Mr. Mancini sued the United States, the Bureau of Prisons, and various medical professionals, alleging medical malpractice under the FTCA and raising *Bivens* claims.  *See generally id.*  He alleges the defendants "are responsible for what is now a verified permanent disability."  *Id.* at 6.  In February 2022, all claims and defendants were dismissed save the medical malpractice claim against the United States.  ECF Nos. 66, 68.  The parties underwent discovery, during which each side disclosed an expert affidavit.  *See* ECF Nos. 177-4, 179.[2]  Defendant United States now moves for summary judgment

---

[2]    Mr. Mancini disclosed another, earlier expert affidavit, but it was superseded by the later affidavit of Dr. Wyard.  Draisey Decl. [ECF No. 177] ¶ 5 ("Plaintiff's counsel . . .

and to exclude the testimony of Mr. Mancini's expert, Dr. Gary Wyard.  ECF No. 175.

Magistrate Judge Schultz recommends granting Defendant's motion, and Mr. Mancini

objects.   *See* ECF Nos. 189, 191.   Pursuant to 28 U.S.C. § 636(b)(1) and Local

Rule 72.2(b)(3), the Court has undertaken de novo review.

## II

Summary judgment is warranted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A fact is "material" only if its resolution might affect the outcome

of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  A dispute over a fact is "genuine" only "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party."  *Id.*  "The evidence of the

non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor."

*Id.* at 255.  A "smoking gun" is not required for the non-movant to defeat a summary

judgment motion.  *Teleconnect Co. v. Ensrud*, 55 F.3d 357, 360 (8th Cir. 1995).  But the

non-movant must show "more than mere speculation, conjecture, or fantasy."  *Clay v.*

*Credit Bureau Enters., Inc.*, 754 F.3d 535, 539 (8th Cir. 2014) (citation and quotations

omitted); *Zayed v. Associated Bank, N.A.*, 913 F.3d 709, 714 (8th Cir. 2019).

---

confirmed by email that the Wyard Affidavit supersedes Tanzid Shams, M.D.'s Expert
Disclosure Affidavit dated July 12, 2022.").  Thus, Dr. Shams' affidavit, ECF No. 98, will
not be addressed.

III

A

Mr. Mancini objects to Magistrate Judge Schultz's recommended finding that Dr. Wyard's opinion fails to meet the statutory standards set out in Minn. Stat. § 145.682. Obj. [ECF No. 191] at 12. Because this ground could be outcome-determinative, it will be addressed first.

The "law of the place where the act or omission occurred" governs FTCA claims. 28 U.S.C. § 1346(b)(1); *LaFromboise v. Leavitt*, 439 F.3d 792, 793 (8th Cir. 2006). Under Minnesota law,[3] a plaintiff "alleging malpractice, error, mistake, or failure to cure . . . against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case," must generally "serve upon defendant with the summons and complaint an affidavit" showing that an expert has reviewed the facts of the case and determined that the defendant "deviated from the applicable standard of care." Minn. Stat. § 145.682, subdivs. 2, 3(1). The parties agree that an affidavit under § 145.682 must "(1) disclose specific details concerning the expert's expected testimony, including the applicable standard of care, (2) identify the acts or omissions that the plaintiff alleges violated the standard of care, and (3) include an outline of the chain of causation between the violation of the standard of care and the plaintiff's damages." *Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 428 (Minn. 2002). *See* Def.'s Mem. in Supp. at 18; Pl.'s Mem.

---

[3]     The alleged medical malpractice occurred in Minnesota. Both FCI Sandstone, where Mr. Mancini is serving his prison sentence and first sought treatment, and Saint Mary's Medical Center, where Mr. Mancini received ACDF surgery, are in Minnesota.

in Opp'n at 8.  "Under Minnesota case law, the affidavit cannot be conclusory or abstract; it must set forth 'specific details concerning [the] experts' expected testimony, including the applicable standard of care, the acts or omissions that plaintiff [ ] allege[s] violated the standard of care and an outline of the chain of causation that allegedly resulted in damage to [the plaintiff].'"  *Mathison v. United States*, 44 F. App'x 27, 29 (8th Cir. 2002) (quoting *Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 193 (Minn. 1990)).  "[M]andatory dismissal with prejudice" results when a plaintiff fails to meet the affidavit requirement.  Minn. Stat. § 145.682, subdiv. 6(b).

Dr. Wyard's affidavit does not meet the level of specificity required by Minnesota law.  Dr. Wyard opines that "[a]s a result of Defendant's deviations from the standard of care for an ACDF, Plaintiff has suffered permanent" injuries.  Wyard Aff. [ECF No. 177-4] ¶ 15.  The problem is Dr. Wyard does not "disclose specific details concerning . . . the applicable standard of care."  *Teffeteller*, 645 N.W.2d at 428.  The affidavit makes reference to "the applicable standard of care," Wyard Aff. ¶¶ 4–5, "the appropriate amount of time," *id.* ¶ 5, "the proper standard of care," *id.* ¶ 8, "the preoperative standard of care," *id.* ¶ 12, and, generally, "the standard of care," *id.* ¶ 15.  But Dr. Wyard never defines the standard or standards he references.

Nor does Dr. Wyard offer any causal connection between the breach of the standard of care and Mr. Mancini's injuries.  Dr. Wyard details some facts about Mr. Mancini's care, including his symptoms and an overview of the timeline of treatment.  *See id.* ¶¶ 6–7, 9–11, 13.  He does not, however, "set out how [he] will use those facts to arrive at opinions of malpractice and causation," as required by Minn. Stat. § 145.682.  *Sorenson*,

457 N.W.2d at 192; *see also D.L.Z. v. Psych.*, Nos. A10-0905, A1-1133, 2011 WL 292137, *11 (Minn. Ct. App. Feb. 1, 2011) (affirming that an expert report was substantively insufficient because the doctor "provided only broad, conclusory statements regarding causation and did not outline the chain of causation that allegedly resulted in [plaintiff]'s injuries."). Dr. Wyard offers only the sort of broad, "empty conclusions" the Minnesota Supreme Court disapproved in *Sorenson* and other cases. *See Anderson v. Rengachary*, 608 N.W.2d 843, 848 (Minn. 2000); *Lindberg v. Health Partners, Inc.*, 599 N.W.2d 572, 577–78 (Minn. 1999); *Stroud v. Hennepin Cnty. Med. Ctr.*, 556 N.W.2d 552, 555–56 (Minn. 1996). Because Mr. Mancini's proffered expert affidavit fails statutory requirements, his medical malpractice claim must be dismissed. Minn. Stat. § 145.682, subdiv. 6(b).

## B

Even if Dr. Wyard's opinions were sufficient under Minnesota statute, they would be inadmissible under the Federal Rules of Evidence. Magistrate Judge Schultz found that Dr. Wyard's expert opinion is "too speculative and unsupported to be admissible under Rule 702 and *Daubert*." R. & R. at 9. Mr. Mancini objects. Obj. at 9.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. That rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702;[4] *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

"District courts have wide latitude in determining whether an expert's testimony is reliable." *Olson v. Ford Motor Co.*, 481 F.3d 619, 626 (8th Cir. 2007). The Eighth Circuit has identified a number of factors courts may consider in determining whether an expert's testimony is the product of "reliable principles and methods," including:

(1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community.

---

[4]     Federal Rule of Evidence 702 was recently updated to clarify that expert testimony may be admitted only if the proponent of the testimony demonstrates it is "more likely than not" that the proffered testimony meets the Rule's admissibility requirements. In adopting amendments to the Federal Rules of Evidence, the Supreme Court noted the amendments "shall take effect on December 1, 2023, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending." Supreme Court Order on Rules of Evidence (Apr. 24, 2023), https://www.supremecourt.gov/orders/courtorders/frev23_5468.pdf. It is just and practicable to apply the updated Rule here. Regardless, the Eighth Circuit has long held that "[t]he proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

*Smith v. Cangieter*, 462 F.3d 920, 923 (8th Cir. 2006). "This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands." *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005). As long as the evidence indicates that the expert evidence is reliable and relevant, "no single requirement for admissibility" governs. *Id.* "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (quotation omitted). But the court must exclude an expert's opinion if it "is so fundamentally unsupported that it can offer no assistance to the jury." *Id.* at 929–30 (quotation omitted). "Expert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006). Furthermore, "under *Daubert* and Rule 403 of the Federal Rules of Evidence, the probative value of the expert testimony must not be substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury." *United States v. Solorio-Tafolla*, 324 F.3d 964, 966 (8th Cir. 2003).

Start with Dr. Wyard's "knowledge, skill, or other specialized knowledge" under Rule 702(a). Dr. Wyard states that he is "a board certified Orthopedic Surgeon" in Minnesota, and his "previous positions include (*see curriculum vitae*)." Wyard Aff. ¶¶ 2–3. Dr. Wyard's curriculum vitae is not attached to his affidavit at ECF No. 177-4, and the Court has been unable to locate it among the parties' other submitted exhibits, *see* ECF Nos. 177–79, 185. Mr. Mancini represents that Dr. Wyard has been practicing medicine

for 45 years and he "holds an MBA in Healthcare Management and acted as Chief of Staff at the Ridgeview Medical Center."  Pl.'s Mem. in Opp'n at 19.

Assuming Dr. Wyard possesses the requisite knowledge and training, though, the Court agrees with Magistrate Judge Schultz that his opinions are inadmissible under Rule 702 and *Daubert*.  The affidavit contains factual errors and contradictions to record evidence that give the Court cause for concern.  *Compare* Wyard Aff. ¶ 9 ("Plaintiff's MRI showed . . . spinal cord compression") *with* ECF No. 178-9 (MRI imaging result with "[n]o cord compression or abnormal cord signal").  *See also* Wyard Aff. ¶¶ 13–14 (twice listing Mr. Mancini's surgery date as November 30, 2018, when in fact the surgery was performed on November 27, 2017).  Expert opinions are inadmissible if they are "unsupported by sufficient facts, or contrary to the facts of the case."  *Marmo*, 457 F.3d at 757.  But even disregarding those factual missteps, Dr. Wyard's report is insufficient.

Dr. Wyard does not identify the "principles and methods"—or the application of those principles and methods—he used to evaluate Mr. Mancini's condition.  *See generally* Wyard Aff.  Under Rule 702, Dr. Wyard must identify some reliable scientific method that he applied to the facts of this case to substantiate his opinion.  Dr. Wyard states only that Defendant breached a duty of care, and that breach caused lasting injuries to Mr. Mancini. *Id.* ¶ 15.  He does not identify the standard of care that should have been used, nor describe how or why delays in Mr. Mancini's treatment caused his present injuries.  As Magistrate Judge Schultz explained, Dr. Wyard "fails to indicate the methodology he used to reach his conclusions and leaves wholly unanswered the question of *how* Defendant's actions caused Plaintiff's injuries.  Without some indication which facts were important and why, the

expert opinion is too speculative and unsupported to be admissible under Rule 702 and *Daubert*." R. & R. at 9. Mr. Mancini's objection will be overruled and Defendant's motion to exclude Dr. Wyard's expert opinions will be granted.

C

Mr. Mancini also objects to the Report and Recommendation "to the extent that its findings are based on a factual record that draws inferences in Defendant's favor." Obj. at 6. Mr. Mancini argues the Report and Recommendation both "omits a number of facts material to the record," *id.* at 7, and "includes several facts that are irrelevant to the issue at hand," *id.* at 7 n.1.

Mr. Mancini gives three examples of material fact omissions. (1) the Report and Recommendation "does not note that Mr. Mancini was experiencing constant and increasing daily pain as he waited to receive an MRI and, subsequently, his surgery; (2) it does not "mention that in response to his consistent complaints of pain, Mr. Mancini was referred to the psychology department of Health Services after staff implied his suffering was mental rather than physical"; (3) lastly, it "omits that FCI Sandstone's Clinical Director—Dr. Paul Harvey, who was responsible for approving and overseeing Mr. Mancini's pre- and postoperative care as well as ensuring that standards of care are met— never examined or even met Plaintiff." *Id.* at 7. Mr. Mancini also objects to Magistrate Judge Schultz's characterization of the timing recommended for Mr. Mancini's ACDF surgery. *Id.* at 8. The Report and Recommendation says that "no timeline was recommended," R. & R. at 3, whereas Mr. Mancini says "no timeline was recommended"

11

*and* the surgeon "told [him he] needed [surgery] soon since it has been 52 days."  Obj. at 8.

The characterization of the facts in the Report and Recommendation does not affect the fundamental problems with Mr. Mancini's case.  Were the facts to be rewritten to include mention of the facts Mr. Mancini posits are missing, the outcome would be the same: Mr. Mancini's proffered expert affidavit is deficient under Minn. Stat. § 145.682, and his claim must be dismissed with prejudice.

D

Lastly, Mr. Mancini objects to "the Court's failure to consider the alternate curing option of ordering Defendant to depose Dr. Wyard."  Obj. at 13.  Mr. Mancini argues that "[i]f the Court has concerns about the evidentiary basis for Dr. Wyard's opinions, the Court should order a deposition of Dr. Wyard rather than simply dismissing Plaintiff's case in its entirety."  *Id.* at 14.

Mr. Mancini leans on *Moore v. Freeman*, No. C1-02-603413, 2003 WL 23737251 (Minn. Dist. Ct. Aug. 21, 2003), to argue that ordering a deposition of Dr. Wyard, rather than dismissing the case under Minn. Stat. 145.682 subdiv. 6, is the more appropriate course of action here.  It is true that the *Moore* court found "[n]either Dismissal [n]or Summary Judgment [wa]s appropriate" based on the expert affidavits.  2003 WL 23737251, at *4.  But in *Moore*, the plaintiff's expert, Dr. Gorecki, had provided three affidavits which "supplied more than adequate disclosure of the expert's opinions."  *Id.* at *2.  The court found Dr. Gorecki had "very clear[ly]" outlined the alleged negligence and "linking of the negligence to the result."  *Id.*  Not so, here.  As discussed, Dr. Wyard's

12

affidavit fails to identify the applicable standard of care, and fails to causally connect Defendant's alleged breach of the standard to Mr. Mancini's injuries.  This is not one of the "borderline cases" where an alternative to dismissal should be employed.  *Id.* at *4 (citation omitted).

## ORDER

Therefore, based upon all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1.      Plaintiff    Mario    Ferbo    Mancini's    Objections    to    the    Report    and Recommendation [ECF No. 191] are **OVERRULED**;

2.      The Report and Recommendation [ECF No. 189] is **ACCEPTED** in full;

3.      Defendant's Motion for Summary Judgment and to Exclude Expert Testimony [ECF No. 175] is **GRANTED**;

4.      Pursuant to Minn. Stat. § 145.682, the action is **DISMISSED WITH PREJUDICE**.

### LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  February 12, 2024                          s/ Eric C. Tostrud
                                                   Eric C. Tostrud
                                                   United States District Court